Argued May 24, affirmed June 13, reconsideration denied August 3, petition for review allowed November 15, 1977

CARSON, *Appellant,*

*v.*

CARSON, nka MIEIR, *Respondent.*

(No. 76-5582, CA 7600)

565 P2d 763

Michael F. Fox, Eugene, argued the cause for appellant. With him on the brief was Daughters & Fox. Eugene.

[ 861 ]

Roberta J. Lindberg, Lane County Legal Aid Service, Inc., Eugene, argued the cause and filed the brief for respondent.

Before Thornton, Presiding Judge, and Tanzer and Johnson, Judges.

JOHNSON, J.

Thornton, P. J., specially concurring opinion.

## JOHNSON, J.

The father seeks custody of his daughter, age 6, under the Uniform Child Custody Jurisdiction Act, ORS 109.700 to 109.930. He appeals the decision of the trial court declining jurisdiction on the grounds that Oregon is an inconvenient forum. The matter is before us on the pleadings and affidavits of the parties and there is no dispute as to the facts.

The marriage of the mother and father was dissolved by decree of the California Superior Court, Los Angeles County, on November 26, 1973. The decree awarded the father custody of the daughter, and the father and daughter have resided in Oregon ever since. The mother continues to be a California resident. Until June 1976 visitation by the mother was infrequent. At that time the father sent the child to California to visit the mother for an agreed period of approximately two months. The father subsequently arranged to have his brother pick up the child in Los Angeles to bring her to Oregon, but the mother refused to turn over the child to the brother. She advised the father that she would turn over the child if he would personally come to Los Angeles and that she intended to have him served with process in order to institute change of custody proceedings. While in California the father was personally served to appear before the Los Angeles Superior Court upon the mother's motion to modify the original custody decree. The husband returned to Oregon with the daughter.

Subsequently, the Los Angeles Superior Court held a hearing at which both the mother and father appeared and testified. On October 15, 1976 the Los Angeles Superior Court entered an order awarding custody to the mother. Four days later the father instituted this proceeding in Oregon. Concurrently he filed a notice of appeal in California, but later abandoned the appeal on December 21, 1976. On November 24, 1976 the trial court allowed the mother's motion to decline jurisdiction. Following abandonment of his

appeal in California the father moved for a reconsideration of the trial court's order declining jurisdiction. This motion was also denied, and the father appeals the denial. In addition the trial court has entered orders restraining the mother from removing the child from Oregon during these proceedings during the pendency of the appeal.

The purposes of the Uniform Child Custody Jurisdiction Act are set forth in ORS 109.720 which provides:

"(1) The general purposes of ORS 109.700 to 109.930 are to:

"(a) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

"(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

"(c) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

"(d) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

"(e) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

"(f) Avoid relitigation of custody decisions of other states in this state in so far as feasible;

"(g) Facilitate the enforcement of custody decrees of other states;

"(h) Promote and expand the exchange of information and other forms of mutual assistance between the

[ 864 ]

courts of this state and those of other states concerned with the same child; and

"(i) Make uniform the law of those states which enact it.

"(2) ORS 109.700 to 109.930 shall be construed to promote the general purposes stated in this section.

"* * * * *."

■ Under the Act the court must go through a multi-step process in determining whether to exercise jurisdiction. First it must ascertain whether it has jurisdiction under ORS 109.730. If it finds that there is jurisdiction, then the court must determine whether there is a custody proceeding pending or a decree in another state which presently has jurisdiction. If so, the Oregon court must decline to exercise its jurisdiction. ORS 109.760(1)[1] and 109.840(1).[2] Finally, assuming the court has jurisdiction and there is not a proceeding pending or a decree, the court then must determine under ORS 109.770 and 109.780 whether to exercise its jurisdiction because of convenient forum.

An Oregon court has jurisdiction of this case by virtue of ORS 109.730(1)(a) because "this state * * * had been the child's home state within six months before commencement of the proceeding * * *." There is not a pending proceeding in California that would preclude jurisdiction under ORS 109.760 because the

---

[1] ORS 109.760 in pertinent part provides:

"(1) A court of this state shall not exercise its jurisdiction under ORS 109.700 to 109.930 if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with ORS 109.700 to 109.930, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

"* * * * *"

[2] ORS 109.840 in pertinent part provides:

"(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with ORS 109.700 to 109.930 or has declined to assume jurisdiction to modify the decree and the court of this state has jurisdiction.

"* * * * *"

husband had abandoned his appeal in that state. The husband also argues that Oregon is not precluded under ORS 109.840 from exercising jurisdiction because of the existing California modification decree because California does "not now have jurisdiction" as provided in that state. We need not reach this question because California did have jurisdiction at the time of the modification proceeding and Oregon is an inconvenient forum under ORS 109.770.

■ The father argues that since Oregon was at the time of the modification the child's home state, California did not have jurisdiction. We would agree that if California did not have jurisdiction, then Oregon may have been an appropriate forum. However, we conclude that California did have jurisdiction. California, like Oregon, has the Uniform Act, Cal Civ Code, §§ 5150-5174 (West 1970). Section 3 of the Uniform Act, ORS 109.730 and Cal Civ Code § 5152 (West Supp 1977),[3] sets forth the jurisdictional requirements under the Act:

"(a) A court of this state which is competent to decide

---

[3] Cal Civ Code, § 5152 (West 1970) is identical to section 3 of the Uniform Child Custody Jurisdiction Act except the word "or" is deleted between paragraphs, but the controlling paragraph (1) contains an additional clause "if the conditions as set forth in any of the following paragraphs are met:". ORS 109.730 is also identical except the word "or" is deleted between paragraphs (1)(a) and (1)(b). Despite the omission we interpret the two paragraphs to be disjunctive. Any other interpretation would lead to an absurd result. Legislative history indicates that the legislature intended to enact the Uniform Act in the same form as proposed by the Uniform Law Commissioners. *See* minutes of House Judiciary Committee meetings of January 17, January 29 and February 1, 1973, and Senate Judiciary Committee meetings of May 9, 23 and 30 and June 6, 1973. The synopsis of House Bill 2051 prepared by the House Judiciary Committee where the bill originated states:

"* * * * *

"*Section 3* establishes the two major bases for court jurisdiction in a child custody proceeding.

"* * * * *

"*Section 6* is intended to avoid conflicts among different courts which might have simultaneous custody proceedings involving the same child and establishes rules for determining which court decision under such circumstances would control. Once a custody decree has

child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(1) this state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

"(2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

"* * * * *

"* * * [P]hysical presence in this State of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this State to make a child custody determination.

"(c) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

Paragraphs (1)(a) and (1)(b) set forth alternative jurisdictional tests whereby two states may have concurrent jurisdiction. The test under paragraph

---

been rendered in one state, jurisdiction would be determined under sections 8 and 14 of the bill.

"*Section 7* contains further provisions to serve as a check on a court in assuming jurisdiction over a case. This section, as does section 6, emphasizes the need for interstate communication and cooperation among the courts.

"* * * * *

"*Sections 13, 14 and 15* are intended to discourage relitigations in other states of an issue already decided by a court having jurisdiction. Section 14 limits the power of a court of this state to modify a decree of a court of another state. Section 15 sets up the machinery for filing and enforcing a decree of another state."

The Senate passed House Bill 2051 without amendment.

(1)(a) is mechanical. If the child and a parent have lived in a state for six months, then that state has jurisdiction because it is the "home state" as that term is defined in ORS 109.710(5). Under paragraph (a)(2), a non-home state may also have jurisdiction provided the more nebulous tests of that paragraph are met. In *Settle and Settle,* 276 Or 759, 556 P2d 962 (1976), the court stated:

> "It is clear that the Commissioners intended to prevent the proliferation of jurisdiction. It is also clear, however, that they did not intend that the existence of 'home state' jurisdiction in one state * * * should automatically preclude the existence of jurisdiction in another state * * *." 276 Or 766-67.

*See also* 9 ULA Child Custody Jurisdiction 108, § 3 (1973).

The question presented is whether under paragraph (a)(2) California had jurisdiction in light of the best interests of the child, the child and one parent having a "significant connection" with California, and the availability in California of "substantial evidence concerning the child's present or future care, protection, training and personal relationships." The following comment of the Uniform Commissioners which is relied upon in *Settle and Settle, supra,* provides some guidance:

> "Paragraph (2) perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with

the state." 9 ULA Child Custody Jurisdiction 108 § 3 (1973).

Although the commissioners speak in terms of "optimum" and "maximum" which are ordinarily defined as absolutes, the context indicates these adjectives were used to mean a high degree of connection and access to evidence. The commissioners obviously were advocating that the term "substantial evidence," for example, as used in the statute was not intended to be used as a substitute for "some evidence" as it may be used in other legal contexts such as administrative law. The commissioners expressly state that there is a need for flexibility. In any event we must look to the plain words of the statute which uses the adjectives "significant" and "substantial" which we interpret as meaning a high but not maximum degree of connection and access to evidence.

Under the circumstances presented here, it would be practically impossible to determine which state, Oregon or California, was the more preferable forum from the standpoint of the child's best interest or which state has the optimum access to evidence. A primary purpose of the Uniform Act was to avoid jurisdictional competition and to promote cooperation with the courts of other states. This purpose would be defeated if we were to substitute our judgment for that of the California court concerning these issues considering the closeness of the question presented. The facts are that both parties were before the California court and appeared as witnesses. In addition the husband's brother and husband's present wife testified on behalf of the husband's retaining custody. The mother apparently called several witnesses who testified as to her rehabilitation as a drug user and fitness as a parent. The parties certainly had a significant connection with California in view of the child's recent two month visit, that the natural mother resides in California, and that the original decree was entered there. Petitioner argues that the California court should

have declined jurisdiction under ORS 109.780[4] because the mother unfairly induced the husband to come to California for service of process.[5] We assume the California court took the mother's conduct into account in determining whether to exercise jurisdiction.

A basic premise of the Uniform Act is that "[w]hile jurisdiction may exist in two states * * * it will not be exercised in both states." 9 ULA Child Custody Jurisdiction 108, § 3 (1973). California has already exercised jurisdiction. Under the circumstances presented here Oregon courts are required to recognize and enforce the California modification decree. ORS 109.830.[6] The father is aggrieved by the Los Angeles Superior Court's decision, but rather than pursue an

---

[4] ORS 109.780 provides:

"(1) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances.

"(2) Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.

"(3) In appropriate cases a court dismissing a petition under this section may charge the petitioner with necessary travel and other expenses, including attorney fees, incurred by other parties or their witnesses."

[5] It would appear that obtaining personal service on the husband was unnecessary in any event, as a court exercising jurisdiction under the Uniform Act has long-arm authority. ORS 109.750 and 109.810.

[6] ORS 109.830 provides:

"The court of this state shall recognize and enforce an initial or modification decree by a court of another state which had assumed jurisdiction under statutory provisions substantially in accordance with ORS 109.700 to 109.930 or which was made under factual circumstances meeting the jurisdictional standards of ORS 109.700 to 109.930, so long as this decree has not been modified in accordance with jurisdictional standards substantially similar to those of ORS 109.700 to 109.930."

appeal of that decision in the appellate courts of California, he in effect seeks an appeal in Oregon. The trial court was correct in declining to exercise jursidiction under ORS 109.770 which provides:

"(1) A court which has jurisdiction under ORS 109.700 to 109.930 to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
"* * * * *

"(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
"* * * * *

"(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in subsections (1) and (2) of ORS 109.720."

Suffice it to say that what the father is attempting here is wholly contrary to the purposes of the Uniform Act set forth in ORS 109.720(1) and (2) quoted in the early part of this opinion.

**THORNTON, P. J.,** specially concurring.

I concur in the result but on a different ground.

It is my view of this case that at the time the mother filed her petition for modification in California, Oregon rather than California was the more appropriate state to assume jurisdiction of any petition for modification because of the terms of § 3 of the Uniform Child Custody Jurisdiction Act (ORS 109.730(1)(a)). I say this because (1) Oregon was the home state of this child at the time and (2) the child was in the legal custody of the father in Oregon, although temporarily visiting in California. Therefore the California court should have declined jurisdiction under the above provision and the *forum non conve-*

[ 871 ]

*niens* provision of the Uniform Child Custody Jurisdiction Act (ORS 109.770).

However, when the father elected to submit to the jurisdiction of the California court and proceeded to a hearing on the merits, it seems to me that he thereby waived all objections to jurisdiction he could have urged under the terms of the Uniform Child Custody Jurisdiction Act and consented to have the cause determined on the merits by the California court.

The California court has now decided the issue of change of custody between the parties in favor of the mother. Under these circumstances the father should be estopped from commencing a new proceeding in Oregon at this time to relitigate the same issue, absent a showing of change of circumstances. *See, Sweeney v. Jackson County,* 93 Or 96, 178 P 365, 182 P 380 (1919); 24 Am Jur2d 1103, Divorce and Separation §§ 949, 972 et seq (1966).