ROBERT J. SONGER, Plaintiff and Counterdefendant-Appellee, v. STATE FARM FIRE AND CASUALTY COMPANY, Defendant and Counterplaintiff-Appellee.—(COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant.)

Fifth District    No. 79-139

Opinion filed November 24, 1980.

James B. Moses, of Smith, McCollum, Riggle & Moses, of Flora, for appellant Country Mutual Insurance Company.

James B. Wham, of Wham & Wham, of Centralia, for appellee State Farm Fire and Casualty Company.

John R. Meyer, of Meyer & Meyer, of Flora, for appellee Robert J. Songer.

Mr. JUSTICE KARNS delivered the opinion of the court:

After a fire destroyed his house and its contents, plaintiff, Robert J. Songer brought this action in the Circuit Court of Clay County for a declaratory judgment to determine the rights and liabilities of defendant State Farm Fire and Casualty Company and defendant Country Mutual Insurance Company under their respective policies issued to the plaintiff. The trial court declared, among other things, that Country Mutual was responsible for a pro rata share of the loss, the amount to be determined in a pending companion suit. However, the trial court reserved the question of whether Country Mutual was liable for plaintiff's attorney's fees.

Country Mutual appealed. We dismissed the appeal without prejudice for lack of a final and appealable judgment. Country Mutual was granted leave to obtain a final judgment on the question of attorney's fees.

On remand, the trial court found that Country Mutual was vexatious and without reasonable cause in having refused to pay its pro rata share of the loss. The court further found that the matter of attorney's fees was controlled by section 155 of the Illinois Insurance Code (Ill. Rev. Stat.

1975, ch. 73, par. 767) as it existed prior to the amendment effective October 1, 1977, which removed the maximum fee recovery limitation of $1,000. Accordingly, the trial court ordered that the plaintiff recover $1,000 of his attorney's fees from Country Mutual.

Before us now is Country Mutual's original contention that its policy was cancelled by substitution prior to the loss. Country Mutual also argues that its refusal to pay was not unreasonable and vexatious, and that it should not be held liable for any part of plaintiff's attorney's fees. Plaintiff disputes these contentions and argues that the trial court erred in applying the attorney's fees statute as it existed prior to the amendment removing the $1,000 limitation.

On April 17, 1973, plaintiff procured from Country Mutual a special farmowner's policy that contained fire insurance coverage of $10,000 for his house and $4,000 for household and personal effects. On January 30, 1974, plaintiff increased the coverage amounts under the policy to $12,500 and $5,000, respectively. On April 17, 1974, plaintiff renewed the policy for a year.

Under "General Conditions," the policy provided, "[o]ther insurance may be prohibited or the amount of insurance may be limited by endorsement attached hereto." Another general condition stated that "[t]his Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the peril involved, whether collectible or not."

Under conditions relating to the fire insurance coverage, as well as certain other coverages, the policy stated, "[u]nless otherwise provided in writing added hereto, other insurance covering any property which is insured hereunder is prohibited." Immediately following this, the policy provided that "[t]his Company shall not be liable for a greater proportion of any loss from any peril or perils than (a) the amount of insurance under this policy bears to the whole amount of fire insurance covering the property, whether collectible or not * * *."

No provision in the policy expressly relieved Country Mutual of liability in the event that the insured obtained other insurance on the property. The policy provided for cancellation at any time at the request of the insured or upon 10-day written notice of cancellation from the company.

Dissatisfied with his Country Mutual policy, plaintiff contacted an agent for State Farm, Weldon McVay, and inquired about the cost and extent of the fire insurance coverage available from State Farm. McVay gave plaintiff a binder dated June 6, 1974, for $32,000 coverage on his dwelling and $16,000 on personal property, and submitted plaintiff's application to State Farm for a homeowner's policy. Both plaintiff and McVay testified that McVay advised plaintiff not to cancel his Country

Mutual policy until he was sure that he had insurance with State Farm. Plaintiff testified that he would have rejected the State Farm policy had the premium been higher than McVay's representation or higher than the Country Mutual premium.

On June 20, 1974, plaintiff's house was destroyed by fire. Plaintiff contacted McVay, who had not yet learned whether State Farm had acted on plaintiff's application. Plaintiff did not receive the policy until a few days after the fire. He gave no notice of intended cancellation to Country Mutual at any time.

Plaintiff submitted proof of loss to both insurers. State Farm paid a pro rata share of the loss, under a provision similar to those in the Country Mutual policy. Robert Strothman, a property claims specialist for Country Mutual, testified that he told plaintiff that the Country Mutual policy was void under the other insurance provision. Subsequently, in a letter dated September 10, 1974, Country Mutual's property claims manager denied liability for plaintiff's loss without assigning a reason. A letter dated February 13, 1975, informed plaintiff that Country Mutual did not desire to continue his policy beyond the anniversary date, April 17, 1975. At trial, counsel for Country Mutual stipulated that the policy "ran its term without him [plaintiff] applying for a refund." Nor does it appear that Country Mutual tendered a partial refund of plaintiff's premium.

The trial court found that plaintiff's loss was $42,684.85 and that State Farm's liability was $31,133.26. It found that the plaintiff did not intend to cancel the Country Mutual policy until after State Farm had issued and delivered its policy to him, which issuance and delivery was not accomplished until after the date of the fire. The court further found that the Country Mutual policy was still in effect on the date of the fire, and the issuance of the State Farm binder prior to the fire and the subsequent issuance and delivery of the State Farm policy after the fire did not effect a cancellation of the Country Mutual policy under the doctrine of cancellation by substitution or any other theory.

■■ It is undisputed that the plaintiff intended to replace the Country Mutual policy with the State Farm policy. However, the record amply supports the court's finding the plaintiff intended to do so only if State Farm in fact issued the policy and the plaintiff was satisfied with its cost and terms. Something more than intent is required to effect an automatic cancellation in this situation. (*Continental Casualty Co. v. Aetna Insurance Co.* (1980), 82 Ill. App. 3d 402, 402 N.E.2d 756.) Under strikingly similar facts, it was held specifically that pre-existing policies were not cancelled where the insureds (1) purchased their new policy from a new agent, (2) did not surrender their pre-existing policies, (3) did not immediately notify their original agent or insurers of a desire to cancel the pre-existing policies, and (4) did not intend to cancel the pre-existing policies until

placed in possession of their new policy. (*Lee v. Ohio Casualty Insurance Co.* (1978), 58 Ill. App. 3d 1, 373 N.E.2d 1027.) *Lee* controls here on the issue of cancellation by substitution.

Country Mutual contends that the doctrine of cancellation by substitution was established in *Larsen v. Thuringia American Insurance Co.* (1904), 208 Ill. 166, 70 N.E. 31. However, as noted in *Lee, Larsen* held only that an insured's knowing ratification of his agent's procurement of additional coverage accompanied by actual surrender of the original policy to the original insurer, actual receipt of a substitute policy and payment under the substitute policy, worked a cancellation of the original policy. *Larsen* found it doubtful that the original insurer's liability would have been released without the insured's ratification of the surrender and cancellation of the original policy, after being fully advised by his agent as to the transaction. Thus, *Larsen* is not only distinguishable on its facts, but contrary in its holding to Country Mutual's position in this case.

Nor does *Wells Petroleum Co. v. Fidelity-Phenix Fire Ins. Co.* (N.D. Ill. 1954), 121 F. Supp. 739, support Country Mutual's broad interpretation of the cancellation by substitution doctrine. Unlike the instant case, in *Wells Petroleum Co.* the replacement policies actually issued, and the insured's broker communicated with the original agency concerning cancellation of the original policies prior to the loss.

■■ *Lee* notes that the doctrine of cancellation by substitution is disfavored and agrees with the overwhelming weight of modern authority favoring the rule that a loss should be divided pro rata where there is overlapping coverage and where the parties have not agreed to the contrary. (Annot., 3 A.L.R.3d 1072 (1965).) Country Mutual contends that such an agreement existed here as its policy provision prohibited other insurance. It has been held that a clear and unambiguous provision that the insurer is not liable while the insured has other insurance on the property will be given effect and will preclude operation of a pro-rata liability clause. (*Farmers Mutual Insurance Co. v. Summers* (1968), 143 Ind. App. 450, 241 N.E.2d 154.) However, no provision in the Country Mutual policy clearly and unambiguously relieved it of liability if plaintiff procured other insurance or a binder pending approval of other insurance. Under these circumstances, the general rule favoring pro rata liability must be applied.

We next consider the question of attorney's fees. Following trial, the court explained its decision as follows:

"A binder was issued for State Farm which was in effect prior to the fire. The policy itself was not completed and was not in effect until after the fire had occurred. This is the big point in this case. The plaintiff testified he did intend to cancel the policy but not

until after the State Farm had accepted his application and after a policy was issued by State Farm.

\* \* \*

I don't know what a person would do if he wanted to change insurance except just what this fellow did. I would want to make sure I had insurance before I cancelled the other policy. I am holding that the theory of cancellation by substitution does not apply in this case. I understand he was covered from a loss by State Farm because of the binder. I am holding the contract was not completed at that time and therefore the Country Mutual policy was still in effect. Nobody is being injured in this except the plaintiff. The plaintiff goes in to get an insurance policy. The loss substantiates the house was worth this amount. The State Farm Insurance was not injured. They were on a policy they got paid for and Country Mutual got paid for an insurance policy. I am going to order that they be paid on a proportionate basis as set forth in each policy.

\* \* \*

Here is a plaintiff who thought he was doing what he should be doing and covered adequately by insurance and ends up on a lawsuit. There's something wrong about this. I am reserving any question about attorney fees."

Subsequently, the court found that Country Mutual's refusal to pay its pro rata share of the loss was vexatious and without reasonable cause, and that the plaintiff was entitled to attorney's fees under section 155 of the Insurance Code. The allowance or disallowance of attorney's fees under this provision is a matter resting in the judgment and discretion of the trial judge, taking into account the totality of the circumstances. *Denverman v. Country Mutual Insurance Co.* (1977), 56 Ill. App. 3d 122, 371 N.E.2d 1147; 22 Ill. L. & Prac. *Insurance* §579 (1956).

It is apparent that the trial court concluded that the facts of this case were plainly outside the scope of any accepted definition of the doctrine of cancellation by substitution. We agree and note further the lack of any provision in the Country Mutual policy relieving it from liability in the event of other insurance and the indications in Country Mutual's communications following the loss that it did not treat the policy as having been cancelled. Under these circumstances, we cannot say the trial court abused its discretion in concluding that Country Mutual's refusal to pay a pro rata share was vexatious and without reasonable cause.

■■ The trial court's original judgment order declaring Country Mutual's pro rata liability and reserving the question of attorney fees was entered following trial on August 8, 1978. The court's order awarding plaintiff

attorney's fees was entered on remand from the original appeal following a hearing on January 23, 1980. Section 155 of the Insurance Code, as it existed prior to October 1, 1977, provided for recovery of reasonable attorney's fees not to exceed $1,000. (Ill. Rev. Stat. 1975, ch. 73, par. 767.) The amended statute appears to remove any fixed limit upon the amount of attorney's fees recoverable by providing for recovery of reasonable attorney's fees and other costs "plus" an amount not to exceed $5,000. Ill. Rev. Stat. 1979, ch. 73, par. 767.

We believe that the trial court erred in applying the earlier version of the statute. Both versions provide for the recovery of attorney's fees "* * * as part of the taxable costs in the action * * *." (Ill. Rev. Stat. 1975, ch. 73, par. 767; Ill. Rev. Stat. 1979, ch. 73, par. 767.) It has been held that there is no vested right in any particular remedy or method of procedure, and statutory amendments affecting procedural rights, including recovery of costs and attorney's fees, should be applied in litigation instituted prior to the amendment, in the absence of a savings clause pertaining to existing litigation. (*Chicago & Western Indiana R.R. Co. v. Guthrie* (1901), 192 Ill. 579, 61 N.E. 658.) The cause must be remanded for the trial court to determine the amount of attorney's fees to be awarded under the statute as amended.

The judgment of the Circuit Court of Clay County is affirmed in part and reversed in part and remanded in accordance with this opinion.

Affirmed in part; reversed in part; and remanded.

JONES, P. J., and HARRISON, J., concur.