*In re* MARRIAGE OF JOAN A. LEVY, Petitioner-Appellee, and RICHARD F. LEVY, Respondent-Appellant.

First District (5th Division)    No. 81-1838

Opinion filed March 26, 1982.

James T. Friedman, of Schiff, Hardin & Waite, Stephen Novack, Beverly Susler Parkhurst, and Richard F. Levy, *pro se*, all of Levy and Erens, both of Chicago, for appellant.

Block, Levy & Becker and Kirsh & Berman, both of Chicago, for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Respondent appeals from two orders entered pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA) in one of which the court declined to exercise jurisdiction over the subject matter of custody of the parties' minor child, vacated and dissolved a temporary injunction enjoining petitioner from proceeding in New York, denied injunctive relief, and struck other portions of respondent's motion for rehearing and his supplemental petition in regard to the minor's visitation.

The trial court, in a judgment of dissolution of marriage entered in January 1980, provided for joint custody of a 10-year-old minor child (minor) but granted physical custody to petitioner pursuant to a marital settlement agreement approved and adopted by the court. The agreement also provided that there should be reasonable visitation rights for respondent; that petitioner would not change the minor's residence from the Chicago area without the prior consent of respondent or order of the court; and that, if asked for a permanent change in the minor's residence, respondent's response would be based only on his views as to the minor's best interests.

In February 1980, petitioner married Ronald Friedland, president of an organization headquartered in New York and India called Sidia Yoga Dham Ashram Foundation whose head is an Indian guru known as "Baba." Although it is undisputed that in 1979 Friedland established a residence in New York, he testified at hearings before the trial court that due to health problems he could not spend winters in a cold climate and that his position as president of the foundation had a bearing on where he lives throughout the year.

After her remarriage, petitioner resided in Chicago with the minor until she moved to New York in April 1980. The minor remained with respondent in Chicago until he completed school in June 1980, when he and his belongings were moved to New York. Petitioner testified that in December 1979 or January 1980 she told respondent that she would be moving to New York in the spring; that respondent suggested that the minor remain in Chicago to finish the school year; and that, when her remarriage was discussed, he made no objection to her moving to New York with the minor. Respondent testified that petitioner told him at that time she did not believe she would marry Friedland or leave Chicago;

that the minor would continue to reside in Chicago and stay in the same school; that he never assented to moving the minor's residency to New York; and that in April 1980 he learned from petitioner of her intention to go to New York to be with Friedland and her guru until the latter's next stop on his world tour.

During the summer of 1980, the minor spent between 5 and 7 weeks in New York and the remainder in Chicago with respondent. From September 1980 to May 1981, petitioner, the minor, and Friedland resided in California because of the latter's health problem and also to be near "Baba." During that period, the minor was enrolled in a California school system.

Petitioner testified that during the summer of 1980, she had discussions with respondent concerning her intention to spend the winter in California with Friedland and the minor, but there was no understanding that the minor would return to Chicago in the fall. Respondent testified that during their discussions, he reminded her of her promise that she would not remove the minor from Chicago and that he did not commence court action before the California move because "he couldn't bear to inflict the pain on [the minor] when he asked him not to." He also stated that while petitioner was in California she told him that "Baba" was going to India and she planned to follow him there with the minor, and when he (respondent) objected she agreed that while she was in India he could return to school in Chicago; that the minor came to Chicago in April 1981 and was interviewed at the school for readmission; and that subsequently, during a telephone conversation, the minor said he would be leaving his California school before the end of the term to be in New York for "Baba's" birthday.

Petitioner returned to New York with the minor and two weeks later petitioned there to modify the Illinois separation agreement for permission to remove the minor to India and to reside with the minor in New York and other parts of the United States and/or the world, with reasonable rights of visitation and temporary periods of custody in Chicago.

On June 8, 1981, respondent filed a petition here requesting, in pertinent part, an injunction to prevent petitioner from continuing the action in New York; a finding that New York is an inappropriate forum; a modification of the original judgment to change the minor's resident to respondent's home; and an order requiring petitioner to show cause why she should not be held in contempt for disregarding orders of the Illinois court. After petitioner moved to strike and dismiss, the court temporarily enjoined petitioner from proceeding in the New York action.

In a hearing on respondent's petition, the court identified the issues to be whether (a) it should exercise subject matter jurisdiction over a

modification of the original judgment and (b) it should issue an injunction restraining petitioner from continuing her action in New York. The court then found that Illinois was not the home State of the minor under the UCCJA; that the minor no longer had significant connections with Illinois—not having been a resident for over one year; and that substantial evidence regarding the minor's well-being is available in another State. Based upon those findings, it entered an order declining to exercise jurisdiction over the subject matter of custody, vacating the temporary injunction, denying further injunctive relief, and striking portions of respondent's petition to custody and injunctive relief. Respondent's motion for rehearing and a supplemental petition to permit visitation were denied on July 27.

Respondent appealed the July 20 and July 27 orders under Supreme Court Rule 304(a) and (b) and, subsequently, filed an amended notice of interlocutory appeal under Supreme Court Rule 307.

OPINION

It is essentially the contention of respondent that the court erred in its application of the provisions of the UCCJA.

We first consider the question of our jurisdiction to consider this appeal. The record shows that on July 27, 1981, petitioner filed a notice of appeal from the July 20 and July 27 orders of the trial court under Supreme Court Rule 304 (Ill. Rev. Stat. 1979, ch. 110A, par. 304). An amended notice of interlocutory appeal subsequently was filed on August 21 under Supreme Court Rule 307 (Ill. Rev. Stat. 1979, ch. 110A, par. 307) from the same orders. Respondent argues that this appeal is before us under Rule 307 and thus, that the scope of our review is limited to a determination of whether it was within the discretion of the trial court to deny injunctive relief, and that a discussion of the trial court's jurisdictional analysis relating to the UCCJA is proper only under Rule 304. We are of the opinion that the appeal is before us under Rule 307, which provides for an appeal as of right from an order refusing to grant an injunction; but that, in any event, the issue is the same under either rule as, in determining whether the trial court properly refused to enjoin petitioner from proceeding in the New York courts, we must necessarily determine whether the trial court here had jurisdiction under the UCCJA.

The statutory authority relevant to the court's determination of its jurisdiction over this custody matter is contained within the provisions of UCCJA as adopted in Illinois (Ill. Rev. Stat. 1979, ch. 40, par. 2101 *et seq.*), the stated principal purposes of which are to avoid conflict with courts of other States, to protect the best interests of the child, and to discourage forum shopping (Ill. Rev. Stat. 1979, ch. 40, par. 2102).

Section 4 of the UCCJA (Ill. Rev. Stat. 1979, ch. 40, par. 2104) provides, in relevant part:

"(a) The circuit courts have jurisdiction to make a child custody determination by initial or modification judgment if:

1. this State

(i) is the home state of the child at the time of commencement of the proceeding, or

(ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

2. it is in the best interest of the child that a court of this State assume jurisdiction because

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and

(ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

\* \* \* ."

Section 7 (Ill. Rev. Stat. 1979, ch. 40, par. 2107) provides:

"(a) A court of this State shall not exercise its jurisdiction under this Act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this Act, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons.

\* \* \* ."

Section 8 (Ill. Rev. Stat. 1979, ch. 40, par. 2108) provides, in part:

"(a) A court which has jurisdiction under this Act to make an initial or modificiation judgment may decline to exercise its jurisdiction any time before making a judgment if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

(b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

1. if another state is or recently was the child's home state;

2. if another state has a closer connection with the child and his family or with the child and one or more of the contestants;

3. if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;

*  *  * ."

We initially note that although the UCCJA appears to confer subject matter jurisdiction of child custody determinations, the term "jurisdiction" is not used in its traditional sense but as a limitation on the existing jurisdiction conferred on the courts by the Illinois Constitution (Ill. Const. 1970, art. VI, §9). *Siegel v. Siegel* (1981), 84 Ill. 2d 212, 417 N.E.2d 1312.

Subsequent to the trial court's decision and effective August 14, 1981, section 4 of the UCCJA was amended to include a provision that "a court, once having obtained jurisdiction over a child, shall retain such jurisdiction unless it concedes jurisdiction to a foreign state or none of the parties to the action, including the child, remain in Illinois." Act of Sept. 11, 1979, Pub. Act 82-190 (to be codified in Ill. Rev. Stat., ch. 40, par. 2104(b)).

Generally, statutory amendments are presumed to operate prospectively unless the legislature clearly intended otherwise; but, where an amendment relates only to remedies or procedure, it is given retrospective application. (*People v. Theo* (1971), 133 Ill. App. 2d 684, 273 N.E.2d 498.) However, an exception to this rule exists, and an amendment will not be construed retroactively where a procedural rule destroys a substantive right. *Hogan v. Bleeker* (1963), 29 Ill. 2d 181, 193 N.E.2d 844. ■■ Since the amendment here is clearly a rule of procedure which does not affect the substantive rights of the parties, it should be given retrospective application, and we will review this action in light of the amendment.

In this regard, there is no question that the trial court initially had jurisdiction over the custody of the minor in the instant case and, under this amendment, as respondent remains in Illinois, jurisdiction should be retained unless it is conceded to New York under the UCCJA. The trial court here determined that it did not have jurisdiction under section 4 and thus made no concession thereof under section 8, and accordingly, we reverse and remand to determine whether it should concede its jurisdiction to New York.

Moreover, we are of the belief that even under the provisions of the UCCJA prior to the effective date of the amendment, the record does not support the trial court's findings that the minor no longer had significant connection with the State of Illinois and that substantial evidence regarding the child's present and future well-being was available in another State.

Because the UCCJA was only recently adopted in Illinois and the

case law applying its provisions is not well established in this State, we look to the decisions of other jurisdictions and to the Commissioners' Notes to the UCCJA for guidance. It appears therefrom that the UCCJA involves a process in which the court must first resolve whether it has jurisdiction under section 4 of the UCCJA and, after such a finding, it must determine under sections 7 and 8 whether it should decline to exercise jurisdiction. See *Vanneck v. Vanneck* (1980), 49 N.Y.2d 602, 427 N.Y.S.2d 735, 404 N.E.2d 1278; *Smith v. Smith* (1979), 40 Ore. App. 257, 594 P.2d 1292; *Etter v. Etter* (1979), 43 Md. App. 395, 405 A.2d 760; *Campbell v. Campbell* (Ind. App. 1979), 388 N.E.2d 607; *Carson v. Carson* (1977), 29 Ore. App. 861, 565 P.2d 763, *aff'd* (1978), 282 Ore. 469, 579 P.2d 846; *Priscilla S. v. Albert B.* (Fam. Ct. 1980), 102 Misc. 2d 650, 424 N.Y.S.2d 613.

The first inquiry as to jurisdiction involves an analysis of the facts under section 4 of the UCCJA, relevant of which here are paragraphs one and two concerning the home State of the minor and the minor's best interests.

Paragraph one provides that jurisdiction exists if the State is the home State of the child at the time of the commencement of the proceeding or if the State had been the child's home State within six months before the proceeding and a parent continues to live in this State. "Home state" is defined in the UCCJA as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months, * * * however, periods of temporary absence of any of the named persons are counted as part of the 6-month or other period." Ill. Rev. Stat. 1979, ch. 40, par. 2103.04.

■■ Here, we believe the trial court properly found that Illinois does not qualify as the home State. The minor spent approximately one-half of the summer of 1980 in Illinois and one-half of the summer in New York. He then went to California with his mother and Friedland and remained there, except for brief periods, until returning to New York in the spring of 1981. The minor clearly had not lived in Illinois for a period of six consecutive months immediately preceding commencement of the action in June 1981 nor had Illinois been the home State within six months before commencement of the proceeding.

Since Illinois does not have jurisdiction under paragraph one, we next consider whether under paragraph two it is in the best interest of the minor that Illinois assume jurisdiction. This determination involves questions as to whether the minor and respondent have a significant connection with Illinois and as to whether there is substantial evidence in Illinois concerning the child's present and future care, protection, training, and personal relationships.

The Commissioners' Note to this subsection indicates that the pur-

pose of paragraph two "is to limit jurisdiction rather than to proliferate it" and "[t]he interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state." (9 Unif. Laws Ann. 124 (1979).) In *Carson v. Carson* (1977), 29 Ore. App. 861, 565 P.2d 763, *aff'd* (1978), 282 Ore. 469, 579 P.2d 846, it was explained that in using the terms "optimum" and "maximum" the commissioners intended only a high degree of connection and access to evidence and that they were obviously advocating that the term "substantial evidence" in the statute was not intended to be used as a substitute for "some evidence" as may be used in other legal contexts.

■■ We believe that both of the paragraph two criteria are met in this case. The record shows that the minor spent his entire life and had all of his schooling in Illinois prior to the divorce proceeding, and that most of his school records are in Illinois as are his brother, sister, grandmother, and an aunt and uncle who lived with the family for a number of years. Further, not only are potential witnesses concerning the minor's education, personal relationships, and well-being in Illinois, but respondent also lives and works in this State and has done so since the minor's birth.

We note that in *Siegel v. Siegel* (1981), 84 Ill. 2d 212, 417 N.E.2d 1312, where the children involved in a custody dispute were born in Illinois, lived in Illinois for seven years, and had a father and grandfather who resided in Illinois, the court found that while the children once had a significant connection in Illinois, at the time of the action no such significant connection existed. The *Siegel* court went on to find that the UCCJA emphasizes available evidence as a factor in whether the court should act and that such evidence in California included the fact that the children had a mother, aunt, and uncle there and, because they had lived there for three years prior to the proceeding, there was evidence of their education, health, personal relationships, and homelife. The instant case is unlike *Siegel* in that the available evidence of the minor's education and personal relationships are also in Illinois and because he had resided in New York for, at most, only a total of nine weeks in the year preceding this action. See also *In re Marriage of Wass* (1981), 94 Ill. App. 3d 436, 419 N.E.2d 32.[1]

Furthermore, we note that the trial court's finding that the minor no longer has significant connections with Illinois was based upon the fact that he had not been a resident of Illinois for over one year and that this is

---

[1] Although *Wass* and *Siegel* were decided under section 601 of the Illinois Marriage and Dissolution Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*), both cases indicate that due to virtually identical provisions under section 601 and section 4 of the UCCJA, their decisions under either statute would have been the same.

inconsistent with section 4(c) of the UCCJA, which specifically provides that although physical presence of a child in the State is desirable, it is not a prerequisite for jurisdiction. Ill. Rev. Stat. 1979, ch. 40, par. 2104(c).

Having ascertained that there is jurisdiction, the UCCJA requires a consideration of whether under the circumstances of the case jurisdiction should be declined. We need not be concerned here with section 7, which requires that a court decline to exercise jurisdiction if at the time of filing a petition a child custody proceeding was pending in another State exercising jurisdiction under the UCCJA, unless the proceeding is stayed by the court of the other State—as we are informed here that the New York court has stayed its proceeding.

However, under section 8 of the UCCJA, a court may decline to exercise its jurisdiction if it finds that it is an inconvenient forum. The Commissioners' Note indicates that the purpose of the inconvenient forum section is to "encourage judicial restraint in exercising jurisdiction whenever another state appears to be in a better position to determine custody of a child. It serves as a second check on jurisdiction" once the tests of section 4 have been met. 9 Unif. Laws Ann. 139 (1979).

The statute sets forth five factors which may be used by the court in determining whether it is an inconvenient forum. They involve not only a consideration of connections and evidence concerning the child in the second State, but also whether the exercise of jurisdiction by the courts of Illinois would contravene the purposes of the UCCJA.

On the basis of the record here, it appears that the trial court did not reach a consideration whether, under section 8, it was an inconvenient forum. It found only that it did not have jurisdiction under section 4.

■■ Thus, whether the action is decided under the provisions of the UCCJA prior to or after the effective date of the amendment, it is our belief that the trial court had jurisdiction and that there remains the requirement under section 8 of a determination as to whether it should decline to exercise its jurisdiction. A finding as to whether another State is a more appropriate forum requires information concerning the child's contacts in New York—evidence which does not appear to have been presented before the trial court (see *Dowhanik v. Dowhanik* (1979), 43 Ore. App. 379, 602 P.2d 1127; *Smith v. Smith* (1979), 40 Ore. App. 257, 594 P.2d 1292), and this matter will be remanded for that determination.

For the reasons stated, the orders appealed from are reversed, and this matter is remanded for further proceedings consistent with the content of this opinion.

Reversed and remanded.

LORENZ and WILSON, JJ., concur.