122 Ill. App.3d 471 (1984)
461 N.E.2d 567
THE BOARD OF EDUCATION OF SCHOOL DISTRICT NO. 170, COOK COUNTY, Plaintiff-Appellant,
v.
THE ILLINOIS STATE BOARD OF EDUCATION et al., Defendants-Appellees.
No. 83-2108.
Illinois Appellate Court  First District (5th Division).
Opinion filed March 9, 1984.
*472 Robert H. Ellch and Thomas J. Canna, both of Scariano, Kula & Associates, P.C., of Chicago Heights, for appellant.
Julia Quinn Dempsey and David A. Thompson, both of Chicago, for appellees.
Order affirmed.
JUSTICE SULLIVAN delivered the opinion of the court:
Plaintiff Board of Education of School District No. 170 (district) appeals from the dismissal of its petition to recover the expenses of litigation, including attorney fees, pursuant to section 14.1(b) of the Illinois Administrative Procedure Act (section 14.1(b)) (Ill. Rev. Stat. 1981, ch. 127, par. 1014.1(b)). The sole issue before us is the applicability of section 14.1(b) to litigation commenced prior to its January 1, 1982, effective date.
In 1971, the Illinois Superintendent of Public Instruction promulgated Rules and Procedures for the Elimination and Prevention of Racial Segregation in Schools (rules) which were subsequently adopted by the Illinois State Board of Education (Board). Shortly thereafter, the district was notified that it was not in compliance with those rules and was required to take affirmative steps to correct alleged racial imbalance in its schools. On April 21, 1976, after several years of discussion regarding the situation, the district was placed on probationary recognition status for its purported noncompliance and directed to submit a comprehensive desegregation plan. Two such plans were submitted, but the Board rejected them and, in July of 1977, the district was notified that unless it requested an administrative hearing within 30 days, it would be placed on nonrecognition status, jeopardizing its receipt of Federal funds. In response to this threatened action, the district filed suit on August 27, 1977, seeking a declaration that the rules were invalid, and on November 21, 1979, the trial court entered an order finding that the rules were arbitrary, capricious, and illegal and enjoining their enforcement. That determination was subsequently affirmed on appeal by decisions of this court (Chicago Heights Public School District 170 v. Illinois State Board of Education (1981), 97 Ill. App.3d 246, 422 N.E.2d 898) and of the supreme court (Aurora East Public School District No. 131 v. Cronin (1982), 92 Ill.2d 313, 442 N.E.2d 511), holding that the Board had acted beyond the scope of its statutory authority in promulgating the rules.
While the Board's appeal was pending before the supreme court, the General Assembly enacted section 14.1(b), effective January 1, 1982, which provides in relevant part:

*473 "In any case in which a party has any administrative rule invalidated by a court for any reason, including but not limited to the agency's exceeding its statutory authority * * *, the court shall award the party bringing the action the reasonable expenses of the litigation, including reasonable attorney's fees." (Ill. Rev. Stat. 1981, ch. 127, par. 1014.1(b).)
Pursuant thereto, the district filed the instant petition in the circuit court on February 23, 1983, seeking to recover $130,417.78 in expenses, including attorney fees, purportedly incurred in the above litigation. The Board moved to dismiss the petition on the grounds that section 14.1(b) was unconstitutional and contrary to public policy and that it could not be applied retroactively. Without reaching the other issues, the trial court ruled that section 14.1(b) was inapplicable because it was not in effect when the rules were declared invalid in 1979. The petition was therefore dismissed, and this appeal followed.

OPINION
The district acknowledges that litigation expenses, including attorney fees, are not recoverable unless specifically authorized by statute or provided for by contract (Midwest Concrete Products Co. v. La Salle National Bank (1981), 94 Ill. App.3d 394, 418 N.E.2d 988), and that, ordinarily, statutes which create new obligations are applied only prospectively in the absence of express language to the contrary (Nelson v. Miller (1957), 11 Ill.2d 378, 143 N.E.2d 673). Nevertheless, it contends that section 14.1(b) may be applied retroactively, arguing that it is a mere change in remedy or procedure of the type courts have found applicable to litigation pending at the time of enactment.
The general rule regarding the retroactive application of statutes is well established:
"When a change of law merely affects the remedy or law of procedure, all rights of action will be enforceable under the new procedure, without regard to whether they accrued before or after such change of law and without regard to whether or not the action has been instituted, unless there is a saving clause as to existing litigation. [Citations.] Changes in procedure or existing remedies will not be applied retrospectively, however, where a vested, constitutionally protected right will be deprived by such application. [Citation.]" (Maiter v. Chicago Board of Education (1980), 82 Ill.2d 373, 390-91, 415 N.E.2d 1034, 1042.)
In applying this general principle, courts have permitted retroactive application of statutory amendments affecting jurisdiction and procedures *474 for service of process (Nelson v. Miller (1957), 11 Ill.2d 378, 143 N.E.2d 673; Ogdon v. Gianakos (1953), 415 Ill. 591, 114 N.E.2d 686; In re Marriage of Levy (1982), 105 Ill. App.3d 355, 434 N.E.2d 400), since such changes do not affect the substantive rights of the parties, but merely govern the manner and forum in which those rights may be enforced. Similarly, changes in a statute of limitations have been applied retroactively where the party affected has a reasonable time within which to bring an action after enactment of the change (Orlicki v. McCarthy (1954), 4 Ill.2d 342, 122 N.E.2d 513; cf. In re Petition of Monaco (1936), 287 Ill. App. 540, 5 N.E.2d 755 (amendment which affected merely choice of remedies, without destroying cause of action, applied retroactively)), but denied where the effect would be to totally bar a cause of action without allowing the party a reasonable time within which to commence suit (Hogan v. Bleeker (1963), 29 Ill.2d 181, 193 N.E.2d 844; cf. Matviuw v. Johnson (1982), 111 Ill. App.3d 629, 444 N.E.2d 606 (amendment barring discovery, through procedural in nature, would not be applied retroactively where effect would be to destroy substantive rights)).
 1 It is the district's position that these cases are dispositive of the issue before us, maintaining that the Board has no "vested right" which would be disturbed by retroactive application of section 14.1(b), and that, since the statute is remedial in nature, the general principle set forth above mandates retrospective application. However, we do not find the concept of "vested rights" particularly helpful in the instant case where we are concerned not with a mere change in an existing procedure or remedy, but imposition of an obligation on defendant which heretofore did not exist. If the existence of a "vested right" were the sole criterion, then defendants would have no protection from the imposition of newly created remedies for past actions, for it can hardly be said that anyone has a "vested right" in that which does not exist. Yet, despite the absence of a "vested right," courts have not uniformly imposed new remedies retroactively. For this reason, we have found it necessary to consider cases in which other courts have confronted this issue, and it appears from our analysis of those decisions that while courts employ varying reasoning, certain common elements are discernable and, we believe, determinative of this question.
We begin our analysis with two cases cited by the district which purport to apply retroactively statutory changes adversely impacting on a defendant. In Songer v. State Farm Fire & Casualty Co. (1980), 91 Ill. App.3d 248, 414 N.E.2d 768, the court considered the applicability of an amendment to section 155 of the Illinois Insurance Code *475 (section 155) (Ill. Rev. Stat. 1981, ch. 73, par. 767) providing for the imposition of attorney fees upon a finding that an insurance company's refusal to settle a claim was vexatious and unreasonable. At the time of the incident giving rise to liability under the policy in Songer, section 155 provided for recovery of attorney fees not to exceed $1,000 (Ill. Rev. Stat. 1975, ch. 73, par. 767); however, prior to issuance of a declaratory judgment in that action, section 155 was amended to remove the fixed limit on the amount of attorney fees recoverable (Ill. Rev. Stat. 1979, ch. 73, par. 767). In reversing the trial court's decision to apply the statute as it existed prior to the amendment, this court stated:
"We believe that the trial court erred in applying the earlier version of the statute. Both versions provide for the recovery of attorney's fees `* * * as part of the taxable costs in the action * * *.' [Citations.] It has been held that there is no vested right in any particular remedy or method of procedure, and statutory amendments affecting procedural rights, including recovery of costs and attorney's fees, should be applied in litigation instituted prior to the amendment, in the absence of a savings clause pertaining to existing litigation." (91 Ill. App.3d 248, 254, 414 N.E.2d 768, 772.)
Similarly, in People v. Frieder (1980), 90 Ill. App.3d 116, 413 N.E.2d 432, the court applied retroactively an amendment to section 41 of the Civil Practice Act (section 41) (Ill. Rev. Stat. 1979, ch. 110, par. 41), which provides for the recovery of expenses, including attorney fees, incurred in responding to untrue pleadings. At the time the allegedly false pleadings were filed in Frieder, section 41 required the party seeking recovery to show that the opponent's allegations were made without reasonable cause, were not made in good faith, and were found to be untrue. (Ill. Rev. Stat. 1975, ch. 110, par. 41.) Shortly thereafter, during the pendency of litigation and prior to the filing of a petition pursuant to section 41, an amendment eliminated the requirement that the movant prove lack of good faith. (Ill. Rev. Stat. 1979, ch. 110, par. 41.) We affirm the trial court's application of the amended version of section 41, stating that "[a] party's statutory burden of proof cannot be governed by a statute no longer in effect at the time the proceeding in which that party has the burden is initiated." 90 Ill. App.3d 116, 120, 413 N.E.2d 432, 436.
Thus, in Songer, the court clearly premised its ruling on the general principle espoused by the district here; i.e., that statutory amendments which affect merely a remedy or a rule of procedure will be applied retroactively. Frieder reaches the same result, albeit without *476 reference to the precise theory; however, we observe two common elements in those cases which are absent here. First, the statutory amendments altered existing remedies, they did not impose new obligations. In Songer, the insurance company was on notice that its vexatious and unreasonable conduct in refusing to settle could expose it to liability for attorney fees; the only change effected by the amendment was the amount of its potential liability. Similarly, in Frieder, the third-party complainant was on notice that the filing of untrue pleadings could subject it to liability; the only change was in the movant's burden of proof. Second, and perhaps more importantly, in both cases the party affected could have avoided liability even after the amendments  in Songer by settling, and in Frieder by amending the untrue pleadings.
In the instant case, the Board's action purportedly giving rise to liability under section 14.1(b) is its attempt to enforce invalid rules in 1977.[1] It clearly had no notice at that time that its actions could subject it to liability for the opposing party's expenses should the rules subsequently be declared invalid. In addition, when section 14.1(b) became effective on January 1, 1982, the Board was no longer in a position to avoid liability; the rules had been declared invalid in 1979, and the Board could not then undo the actions it took in 1977.
It appears to us that other courts have found this distinction important in determining whether to apply retroactively a statute creating a new obligation to compensate the opposing party for the expenses of litigation. In Harsford v. Rei (1978), 375 Mass. 783, 377 N.E.2d 427, the court refused to give retrospective application to a statute providing for the award of expenses for insubstantial, frivolous, or bad-faith claims or defenses where judgment was rendered prior to the effective date of the statute, even though the petition for expenses was filed after that date. Clearly, under those circumstances, the party against whom liability was sought was not on notice that his action in filing suit might impose liability upon him, even though he had no "vested right" to file an insubstantial, frivolous, or bad-faith claim. In addition, since the statute became effective after judgment was rendered, the plaintiff was no longer able to avoid liability, or at least limit the extent of his liability, by seeking a voluntary dismissal of his action. Similarly, in Bouldin v. Turek (1979), 127 Ariz. 77, 607 P.2d 954, *477 the court refused to apply a statute allowing recovery of attorney fees by the prevailing party in a suit arising out of a contract to an action commenced before the effective date of the statute. Although the court in Bouldin predicated its decision on a finding that the imposition of attorney fees is a substantive rather than a procedural change, it seems that, in that case, the party sought to be held liable also had no notice that its actions might subject it to liability, and had no opportunity thereafter to avoid liability.
In contrast to Bouldin, a similar statute was held applicable where it became effective after the contractual cause of action accrued, but before suit was commenced. (Barbato, Super & Robinson, Inc. v. Koerner (La. App. 1981), 394 So.2d 820; see also Cutter Flying Service, Inc. v. Straughan Chevrolet, Inc. (1969), 80 N.M. 646, 459 P.2d 350.) Under those circumstances, the party sought to be held liable had notice that its actions could give rise to liability for expenses, and had ample opportunity to avoid that liability.
 2 It is our view that the instant situation is analogous to those cases wherein the court refused to give retroactive application to a statute imposing liability for the opposing party's litigation expenses. In each case, (1) liability did not exist prior to enactment of the legislation; (2) the conduct giving rise to possible liability occurred prior to the statute's effective date; and (3) the party against whom expenses were sought could not avoid or limit its liability by any action taken after the statute's effective date. (Compare Overseas African Construction Corp. v. McMullen (2d Cir.1974), 500 F.2d 1291 (statutory amendment affecting imposition of litigation expenses applied to fees incurred after its effective date on a finding that the affected party was thereafter on notice that its continued action in resisting liability could subject it to the imposition of costs).) For these reasons, we believe that section 14.1(b) is a new obligation, which is to be given prospective application in the absence of legislative intent to the contrary, rather than a mere change in remedy or procedure of the type which may be applied retrospectively.
The district further asserts, however, that the Board did have notice of its potential liability for attorney fees, and that the application of section 14.1(b) is therefore proper. In support of its argument, it analogizes the facts of this case to those in Bradley v. School Board (1974), 416 U.S. 696, 40 L.Ed.2d 476, 94 S.Ct. 2006, wherein the United States Supreme Court gave retroactive application to section 718 of title VII of the Emergency School Aid Act (20 U.S.C. sec. 1617 (1976)). A detailed analysis of that case is necessary to an understanding of the district's position and our response thereto.
*478 In Bradley, a class action brought in 1961 to force desegregation of the Richmond public schools resulted in approval of a desegregation plan submitted by the defendant, subject to continued court supervision. Thereafter, it became apparent from decisions of the supreme court in other cases that the Bradley plan was constitutionally inadequate; however, the defendant therein took no action to modify its plan, and the plaintiffs were forced to petition for further relief in 1970. That relief was granted in 1972, and the trial court also awarded attorney fees for the 1970-72 litigation pursuant to its common law equitable powers upon a finding that (1) the defendant had unreasonably delayed compliance with relevant legal standards; and (2) the plaintiffs were acting as private attorneys general in seeking to vindicate important public rights.[2] While the defendant's appeal of that award was pending, section 718 was enacted, granting Federal courts statutory authority to award a reasonable attorney fee in an appropriate school desegregation case. The Supreme Court held that the Circuit Court of Appeals erred in refusing to apply section 718 to affirm the award, stating that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." (416 U.S. 696, 711, 40 L.Ed.2d 476, 488, 94 S.Ct. 2006, 2016.) The court went on to hold that there was no manifest injustice in applying section 718 retroactively, specifically noting that, at the time the defendant engaged in the conduct giving rise to liability, it was aware that its course of action could subject it to the payment of the opposing party's litigation expenses under then-existing common law principles. 416 U.S. 696, 721, 40 L.Ed.2d 476, 493-94, 94 S.Ct. 2006, 2021.
Far from supporting the district's position, we believe that Bradley offers further justification for our view that, in the instant case, application of section 14.1(b) would be unfair. As noted, the Supreme Court in Bradley found that the defendant therein, unlike the Board here, was on notice at the time it acted that its conduct could give rise to liability for expenses; section 718 merely provided an additional basis for imposing that liability. This same analysis is clearly evident *479 in Northcross v. Board of Education (6th Cir.1979), 611 F.2d 624, and Wharton v. Krefel (8th Cir.1977) 562 F.2d 550, cited by the district, wherein the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. sec. 1988 (1976)) was given retroactive application. Moreover, in these latter cases, the courts also noted that the legislative history of that Act clearly evidenced Congress' intention that it be applied to pending litigation (see Wharton v. Knefel), further supporting its retroactive application.
 3 The district argues that section 14.1(b) is merely an expansion of the Board's liability under section 2-611 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2-611); therefore, it posits, the Board was on notice that its conduct could give rise to liability for the expenses of litigation, rendering its analogy to Bradley valid. We disagree. Section 2-611 provides in pertinent part that "[a]llegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee * * *." We fail to see how notice that it could be liable for the consequences of untrue pleadings can be equated with notice that its conduct in seeking to enforce its rules could give rise to liability for all of the district's expenses in seeking to have those rules declared invalid.[3] In Bradley, the conduct giving rise to liability for expenses under section 718 was the same conduct which gave rise to liability under common law theories; the defendant therein knew the consequences at the time it acted and could have avoided them. Here, there is no relationship between the conduct sought to be proscribed by section 2-611, filing untrue pleadings, and the conduct proscribed by section 14.1(b), enforcement of rules later found to be invalid. Thus, at the time it acted, the Board had no notice of the consequences of its conduct so that it might avoid liability.
Although we have determined that section 14.1(b) imposes a new obligation of the kind which requires prospective application, our analysis is not complete, for even new obligations may be applied retrospectively if the legislature so intends. (Nelson v. Miller (1957), 11 Ill.2d 378, 143 N.E.2d 673.) In United States Steel Credit Union v. Knight (1965), 32 Ill.2d 138, 204 N.E.2d 4, the supreme court held *480 that a statute imposing fees to compensate the State for the cost of supervising credit unions (Ill. Rev. Stat. 1963, ch. 32, par. 496.25) could be applied retroactively, noting that "[r]etroactive legislation is not favored, and as a general rule statutes are construed to operate prospectively unless the legislative intent that they be given retroactive operation clearly appears from the express language of the acts, or by necessary or unavoidable implication." (32 Ill.2d 138, 142, 204 N.E.2d 4, 6.) There, the court looked not only to the logical interpretation of the statute's language, but to its purpose, and found that purpose best served by retroactive application.
 4 We find nothing in the language of section 14.1(b) which mandates retroactive application thereof, nor is there anything within its legislative history requiring that result. We have also considered the purpose of section 14.1(b), and find that under the circumstances of this case, retroactive application thereof would not further the legislature's goal. It appears that the legislature had a twofold purpose in enacting section 14.1(b): (1) discouraging enforcement of invalid rules (or, perhaps, encouraging agencies to conduct a review of existing rules and regulations with a view to eliminating those of doubtful validity); and (2) giving those subject to regulation an incentive to oppose doubtful rules where compliance would otherwise be less costly than litigation. Neither of these goals would be furthered by imposition of liability here. The Board had already sought to enforce the rules in question long before January 1, 1982, and the district's opposition thereto in 1977 was obviously not motivated by section 14.1(b), which did not arise until several years later, but by its perception that the cost of compliance was greater than the cost of litigation. In any event, we do not believe that either purpose would be furthered by retroactive application; therefore, we cannot say here that such was the legislature's intention.
For the foregoing reasons, the trial court's order dismissing the district's petition for expenses is affirmed.
Affirmed.
MEJDA, P.J., and LORENZ, J., concur.
NOTES
[1] We reject the Board's contention that the operative time is 1971 when the rules were promulgated. There is no liability imposed by section 14.1(b) for the mere adoption of invalid rules; the harm occurs and the liability accrues when an agency seeks to enforce invalid rules, forcing the opposing party to incur expenses in resisting their application.
[2] This theory of recovery was prevalent in the Federal courts, albeit not without controversy, until the supreme court held, in Alyeska Pipeline Service Co. v. Wilderness Society (1975), 421 U.S. 240, 44 L.Ed.2d 141, 95 S.Ct. 1612, that in the absence of statutory authorization, Federal courts could not properly award attorney fees on a "private attorney general" theory. In direct response to the Alyeska holding, Congress enacted the Civil Rights Attorney's Fees Awards Act of 1976 (42 U.S.C. sec. 1988 (1976)).
[3] While we do not find the issue dispositive, we also note that, contrary to the district's assertion, the Board was not subject to an award of attorney fees pursuant to section 2-611 at the time this litigation commenced. Section 2-611 was amended to provide for the liability of State agencies thereunder effective November 23, 1977, several months after this suit was filed.