In re MARRIAGE OF CRAIG DOEHNER, Petitioner-Appellant, and NANCY DOEHNER JESSUP, n/k/a Nancy Cull, Respondent-Appellee.

Third District   No. 3—90—0873

Opinion filed July 2, 1991.—Modified opinion filed July 15, 1991.

Dunn & Martin, Ltd., of Joliet (Claire M. Wilson, of counsel), for appellant.

Leanne M. Lantz, of McSteen, Kozlowski & Polito, of Joliet, for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

Petitioner, Craig Doehner, appeals from an order of the trial court denying his motion to dismiss the petition to modify child custody filed by respondent, Nancy Cull. The issue presented is whether the trial court's decision not to decline jurisdiction on the basis of *forum non conveniens* was an abuse of discretion. We conclude that it was.

The parties were married in 1975. The parties' only child, Kathleen Doehner, was born April 29, 1979, in Richmond, Virginia. Following the birth, the family moved to North Carolina. On November 1, 1983, a judgment of dissolution of marriage was entered in Buncombe County, North Carolina. Joint custody of Kathleen was awarded to the parties by the North Carolina court.

In February 1985 the parties independently moved to Du Page County, Illinois. By agreement, the judgment of dissolution entered in North Carolina was registered and enrolled in the circuit court of Du Page County. The parties also submitted a joint parenting agreement which the circuit court approved and incorporated into the judgment.

On November 2, 1988, an agreed order was entered in Du Page County which granted Craig leave to remove Kathleen from Illinois to North Carolina. On February 2, 1989, Kathleen moved from Illinois to reside with Craig in Greenville, North Carolina.

Nancy subsequently moved to Will County, Illinois, and established the judgment of dissolution of marriage in the circuit court of Will County. On February 7, 1990, Nancy filed a petition for modification of

custody in Will County. Craig filed a motion to dismiss Nancy's petition on March 6, 1990. Craig then filed a petition for modification of custody in North Carolina on May 4, 1990. Craig's motion to dismiss Nancy's petition was denied, and he appealed to this court. Craig's petition for modification of custody is currently stayed in North Carolina pending the outcome of this appeal.

■ The primary issue on appeal involves an application of the inconvenient forum provisions of the Uniform Child Custody Jurisdiction Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 2101 *et seq.*). The parties acknowledge that the circuit court of Will County retained subject matter jurisdiction in this matter pursuant to section 4(b) of the Act. (Ill. Rev. Stat. 1989, ch. 40, par. 2104(b).) Section 8 of the Act, however, allows a court to decline to exercise jurisdiction "if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." Ill. Rev. Stat. 1989, ch. 40, par. 2108(a).

Section 8 provides a list of factors the trial court should consider when determining whether a more convenient forum exists:

> "(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

> 1. if another state is or recently was the child's home state;

> 2. if another state has a closer connection with the child and his family or with the child and one or more of the contestants;

> 3. if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state; [and]
> * * *

> 5. if the exercise of jurisdiction by a court of this State would contravene any of the purposes stated in Section 2 of this Act [(Ill. Rev. Stat. 1989, ch. 40, par. 2102)]." (Ill. Rev. Stat. 1989, ch. 40, par. 2108(c).)

As the application of these criteria requires exercise of the trial court's discretion, a decision not to decline jurisdiction will be affirmed absent an abuse of that discretion. (*In re Marriage of Hilliard* (1989), 178 Ill. App. 3d 620, 625, 533 N.E.2d 543, 546.) In the case before us, we believe the decision of the trial court to decline to concede jurisdiction to North Carolina was an abuse of discretion, and so we reverse.

■ The primary objective of the trial court is to determine which court can most capably act in the best interests of the child. (*In re Marriage of Pavelcik* (1985), 138 Ill. App. 3d 1060, 1064, 487 N.E.2d 33, 35.)

A proper analysis of the four factors set forth above from section 8 of the Act leads to the conclusion that Illinois should decline to exercise its jurisdiction in this custody matter.

■ Applying the first factor, we find that North Carolina is Kathleen's "home state." "Home state" is defined in the Act as "the state in which the child *immediately preceding the time involved* lived with his parents [or] a parent *** for at least 6 consecutive months." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 40, par. 2103.04.) Although the "time involved" for purposes of applying the six-month rule is not explicitly set forth in the inconvenient forum provisions of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 2108), we consider the February 1990 filing of Nancy's petition to modify custody as the operative date in the statutory time frame. Since Kathleen had moved to North Carolina a full year earlier, we reason that her stay with Nancy in Illinois did not "immediately precede" the filing of the petition. Nor do we consider Illinois as having "recently" been Kathleen's home State. Cf. *In re Marriage of Miche* (1985), 131 Ill. App. 3d 1029, 1031-32, 476 N.E.2d 774, 776 (in which the court construed the definition of "home state" only as it applied to section 4(a)(1)(ii) of the Act concerning subject matter jurisdiction. Ill. Rev. Stat. 1989, ch. 40, par. 2104(a)(1)(ii)).

Under the second factor, we believe Kathleen has a closer connection with North Carolina than with Illinois. The trial court heard testimony that Kathleen has made friends with other girls in her neighborhood and frequently attends parties and outings with these children. She attends church services with Craig and his new family, and participates in church-related functions with other children. She was named to the honor roll at school and has shown improvement in standardized testing since moving from Illinois. She has been involved in extracurricular activities, including gymnastics, basketball, swimming, and cheerleading. She also maintains a relationship with her maternal grandparents, who live in North Carolina. By contrast, Kathleen's only continuing connections with Illinois are her mother, periodic visits with acquaintances from her school days in Illinois, and occasional church attendance. It is apparent that she has many social activities and interests in North Carolina.

With the guiding principle of the child's best interests, we find that North Carolina is the forum with the greatest access to relevant evidence concerning Kathleen's present and future well-being. A more relevant determination as to Kathleen's future care, protection, training and personal relationships can be made from information contained in the State with the most recent contact with the child. The statute directs the court to look at the child's present and future circumstances, not

merely at a previous period when Kathleen resided in Illinois. (*In re Marriage of Slate* (1989), 181 Ill. App. 3d 110, 115, 536 N.E.2d 894, 897.) North Carolina clearly has superior access to current information which would impact upon Kathleen's well-being. Her minister and teachers are present in that State to comment on her religious and academic performance, and friends and acquaintances are available to testify concerning her personal relationships. Any records, history and paperwork in Illinois regarding Kathleen's stay in Illinois can easily be transferred and fairly used in another forum.

Finally, the exercise of jurisdiction by an Illinois court in this case would contravene the goals and purposes of the Act, including those that (i) promote the rendering of a custody determination in the State which can best decide the case in the interest of the child; and (ii) assure that litigation takes place in the State into which the child and his family have the closest connection, and where significant evidence concerning the child's care, protection, training and personal relationships is most readily available. Ill. Rev. Stat. 1989, ch. 40, pars. 2102(a)(2), (a)(3).

While no forum where a choice exists is likely to be equally convenient for all parties, it can at least be determined from the record that North Carolina is not an inconvenient forum for Nancy. Compared to Craig's ability to travel to Illinois, Nancy's part-time employment with a passenger airline allows her a more flexible and less expensive mode of transportation to North Carolina. Also, Kathleen will be less inconvenienced by travel if this matter is litigated in her home State. In any event, the Act is written to protect the child's best interests; any hardships faced by the parents must give way to what is in the best interests of the child. Schiller, *Uniform Child Custody Jurisdiction in Light of Siegel and New Legislation*, 65 Chi. B. Rec. 72, 75 (1983).

Based upon our review of the Act and all the evidence, we find the trial court's decision not to decline jurisdiction in favor of North Carolina was against the manifest weight of the evidence. In light of our ruling reversing the trial court, we decline to address Craig's additional argument regarding the sufficiency as a pleading of Nancy's petition for modification of custody.

The judgment of the trial court is reversed.

Reversed.

SLATER and GORMAN, JJ., concur.