DONNI LEE RICHARDSON, Petitioner-Appellant, v. JOHN V. RICHARD-
SON, Respondent-Appellee.

Third District   No. 3—92—0795

Opinion filed December 27, 1993.

BARRY, J., specially concurring.

Jeffrey McCutchan, of Chicago, for appellant.

Lynch & Bloom, of Peoria (David M. Lynch, of counsel), for appellee.

JUSTICE LYTTON delivered the opinion of the court:

The marriage between the petitioner, Donni Lee Richardson (mother), and the respondent, John V. Richardson (father), was dissolved in California in bifurcated proceedings completed in March 1989. The parties were awarded joint custody of their daughter, Brandi; however, the judgment provided that Brandi's primary residence was with her father. The mother then moved to Illinois, while Brandi lived with her father in California. Pursuant to a written agreement between the parents entered on July 5, 1991, the father permitted Brandi to come to Illinois to live with her mother in order that Brandi could attend fifth grade the following school year.

While Brandi was staying with her mother in Illinois, the father moved to Arizona to pursue employment opportunities. In accordance with the parents' agreement, Brandi was returned to her father on June 21, 1992. Brandi has resided with her father continuously since this date.

On August 4, 1992, the mother filed a petition with the circuit court of Tazewell County, Illinois, seeking to enroll the California divorce and custody judgment in Illinois. The father filed a special and limited appearance and asserted that Illinois lacked subject matter jurisdiction. The trial court agreed and dismissed the case. The mother appeals.

The sole issue before this court is whether the circuit court erred in granting the father's motion to dismiss for lack of subject matter jurisdiction. We affirm.

The issue of jurisdiction is governed by the Uniform Child Custody Jurisdiction Act (UCCJA) (Ill. Rev. Stat. 1991, ch. 40, par. 2101 et seq.). Generally, the purposes of the UCCJA are to avoid jurisdictional competition and conflict with courts of other States in child custody matters; promote cooperation with the courts of other States; assure that child custody litigation occurs in the State where the child and his or her family has the closest connection, and where evidence of the child's care, protection, training and personal relationships is most readily available; to discourage controversies over child custody

matters; to deter abductions; and to avoid relitigation of child custody decisions of other States. (Ill. Rev. Stat. 1991, ch. 40, pars. 2102(a)(1) through (a)(6).) The UCCJA is to be construed to promote its stated general purposes. Ill. Rev. Stat. 1991, ch. 40, par. 2102(b).

Section 4(a) of the UCCJA provides that Illinois circuit courts have jurisdiction to make child custody determinations if:

"1. this State

(i) is the home state of the child at the time of commencement of the proceeding, or

(ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

2. it is in the best interest of the child that a court of this State assume jurisdiction because

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and

(ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

3. the child is physically present in this State and

(i) the child has been abandoned or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

4. (i) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1., 2., 3., or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and

(ii) it is in the best interest of the child that this court assume jurisdiction." Ill. Rev. Stat. 1991, ch. 40, pars. 2104(a)(1) through (a)(4).

In the instant case, the mother asserts that Illinois possesses jurisdiction under sections 4(a)(1), 4(a)(2), and 4(a)(4). The mother's first argument is that Illinois constitutes Brandi's "home state" under section 4(a)(1)(ii). Section 3.04 of the UCCJA defines "home state" as

"the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived

from birth with any of the persons mentioned, however, periods of temporary absence of any of the named persons are counted as part of the 6-month or other period." Ill. Rev. Stat. 1991, ch. 40, par. 2103.04.

■ In deciding whether a child "lived" in a particular State for purposes of determining whether that State qualifies as the child's home State, a court must not only examine whether the child was physically in that State, but also under what circumstances the child came to and remained in the State. Section 3.04 explicitly states that "periods of temporary absence of any of the named persons are counted as part of the 6-month or other period." (Ill. Rev. Stat. 1991, ch. 40, par. 2103.04.) The word "temporary" means " '[t]hat which is to last for a limited time only, as distinguished from that which is perpetual, or indefinite, in its duration.' " (*Allstate Insurance Co. v. Stewart* (1987), 158 Ill. App. 3d 129, 133, 511 N.E.2d 188, quoting Black's Law Dictionary 1312 (5th ed. 1979).) The word "absence" means "[t]he state of being absent, removed, or away from one's domicile, or usual place of residence." (Black's Law Dictionary 8 (5th ed. 1979).) "Temporary absence" does not connote a particular length of time. Under appropriate circumstances, the term can apply to a period of many months. See *Lidonnici v. Davis* (D.C. Cir. 1926), 16 F.2d 532, 534.

The mother argues that the trial court had subject matter jurisdiction based on section 4(a)(1)(ii), because Illinois had been Brandi's home State within the six months preceding the commencement of this proceeding. This argument is based upon the assumption that Brandi's stay in Illinois from July 1991 to June 1992 satisfied the six-month requirement of section 3.04.

Under the strict "physical presence" analysis employed by the mother in this case, any lengthy visits outside the State would defeat the statutory six-month requirement. Indeed, any extended visit of six months would automatically vest another State with jurisdiction over the custody issue. Such a result is contrary to the general purposes of the statute. (See *Middleton v. Middleton* (1984), 227 Va. 82, 95, 314 S.E.2d 362, 370-71; *Harper v. Landers* (1986), 180 Ga. App. 154, 157, 348 S.E.2d 698, 700-01; *Fuge v. Uiterwyk* (La. App. 1989), 542 So. 2d 726, 728-29.) If the mother's position were adopted, agreements providing for extended out-of-State visitations would be discouraged because of the potential legal consequences to the custodial parent. We believe that such agreements should be encouraged as a matter of public policy.

At the time that Brandi came to Illinois, and throughout her entire stay, it was the clear understanding of all parties that Brandi would not remain in this State. Within the context of the facts of this case, Brandi's 11-month stay in Illinois constituted a "temporary absence" from California. Under section 3.04, the time period from July 1991 to June 1992 is to be credited to the time necessary for California to obtain and/or maintain "home state" status. Because Brandi's absence from California was temporary for purposes of calculating time under the "home state" provision in section 3.04, the clock never began to run in Illinois.

Parenthetically, upon her return to her father in Arizona, Brandi was no longer "temporarily absent" from California. Under section 3.04, the six-month period necessary for Brandi to establish Arizona as her home State began to run on June 21, 1992. Accordingly, we hold that at this time Arizona now constitutes Brandi's "home state." The mother has failed to demonstrate that Illinois possesses subject matter jurisdiction pursuant to section 4(a)(1)(ii).

If the concurring opinion's construction of the statute were allowed to stand, we believe absurd results would occur. Under the concurrence's approach, while a temporary absence of a parent would have no effect on the home State status of the child, a brief interstate visit by the child would cause a lapse in the "6 consecutive months" required under the statute. In effect, this would require the strict, continuous physical presence of a child within a single State. Any parent attempting to establish jurisdiction on the basis of the "home state" provision would be required to prove that the child never left the boundaries of that State. In an era of interstate travel, such an approach is untenable. For example, a parent living in Moline who attended religious services in Iowa would be unable to bring his or her child with him or her to worship. The purpose of the statute is to establish a home State, not some jurisdictional jail for the child.

We would also note that the suggestion to limit "temporary absence" to six calendar months finds no support in the statute. "Temporary absence" was not defined by the legislature. The concurring opinion's approach discourages cordial agreements for long-term visits even though such agreements may be in the best interests of the child. We believe that agreements for a child to live away from the home State for more than six months are frequently so that the child can attend school, such as the instant case.

The concurring opinion incorrectly asserts that temporary absences must be less than six months since the UCCJA requires that a child live in a State for six consecutive months to establish it as a new

home State. The concurring opinion confuses two provisions which pertain to distinct concerns. Indeed, as demonstrated in this case, these provisions are directed toward different States. The "temporary absence" provision applies to a State already possessing jurisdiction (here, California), while the "home state" provision applies to States in which a party is attempting to establish jurisdiction (here, Illinois). As the concurring opinion correctly notes, more than one State may possess jurisdiction at the same time, and therefore, the establishment of jurisdiction in Illinois is unrelated to the divesting of jurisdiction in California. Thus, the concurring opinion erred in concluding that the six-month requirement in the "home state" provision served as a limitation on the "temporary absence" provision.

Finally, the court's "temporary absence" analysis is more compatible with the purpose and language of the statute, as well as the facts presented in this case. Notwithstanding the reasoning in the concurring opinion, the express agreement of the parents was that Brandi would return to her father at the end of the school year. For the above-stated reasons, we disagree with the concurring opinion's interpretation of sections (4)(a)(1) and 3.04.

The mother next argues that the trial court had subject matter jurisdiction pursuant to section 4(a)(2). Under this provision, this State may exercise jurisdiction if it is in the best interest of the child. There are two requirements under section 4(a)(2) that must be met in order for a trial court to exercise subject matter jurisdiction; first, that the child and his parents, or the child and at least one contestant, have a significant connection with Illinois, and second, that there is substantial evidence available in Illinois concerning the child's present or future care, protection, training, and personal relationships. Ill. Rev. Stat. 1991, ch. 40, pars. 2104(a)(2)(i), (a)(2)(ii).

We find that the trial court lacked subject matter jurisdiction under section 4(a)(2). At the time that the mother filed her petition in Illinois, Brandi had returned to live with her father. This was in accordance with the California judgment and the 1991 written agreement of the parents. Thus, at the time that the Illinois proceeding was commenced, Brandi's temporary stay in Illinois had terminated. Absent changes in the custody judgment, which this court cannot presume, any future trips that Brandi may make to Illinois will be for the purpose of a temporary visit with her mother. Under these circumstances, it cannot be said that Brandi has a "significant connection" with Illinois, or that there is available in Illinois substantial evidence concerning her "present or future care." (Ill. Rev. Stat. 1991, ch. 40, pars. 2104(a)(2)(i), (a)(2)(ii).) The trial court did not abuse its discretion

in finding that it lacked subject matter jurisdiction under the UCCJA. See *In re Marriage of Kitchen* (1984), 126 Ill. App. 3d 192, 197, 467 N.E.2d 344.

Finally, the mother argues that the trial court had subject matter jurisdiction pursuant to section 4(a)(4). Under this provision, it must be demonstrated that no other State appears to have jurisdiction under the provisions of section 4, or that another State has declined jurisdiction in favor of Illinois. Ill. Rev. Stat. 1991, ch. 40, par. 2104(a)(4).

■ We disagree with the mother's argument that the trial court had subject matter jurisdiction under section 4(a)(4). It is undisputed that with the exception of the trial court below, no State has declined jurisdiction. It is also undisputed that California possessed jurisdiction at the time that the divorce decree was entered, and thereafter while Brandi lived in California. Under section 3.04, the time that Brandi was temporarily visiting the mother is counted as part of the period of time California was her home State.

Upon Brandi's return to her father in Arizona, her absence from California was no longer temporary, and she began to live in Arizona. California's jurisdiction did not lapse the moment that Brandi and her parents stopped living in California. This is because section 4(d) specifically provides that physical presence of the child is not a prerequisite for jurisdiction to determine custody. (Ill. Rev. Stat. 1991, ch. 40, par. 2104(4)(d).) The fact that the child is no longer physically present within California was not fatal to that State's jurisdiction. *Hollo v. Hollo* (1985), 131 Ill. App. 3d 119, 125, 474 N.E.2d 827.

As noted above, the UCCJA is to be construed to promote its stated general purposes. (Ill. Rev. Stat. 1991, ch. 40, par. 2102(b).) It is in light of these policy concerns and the facts presented in this case that we hold that the trial court correctly declined to assume subject matter jurisdiction over this case.

Because we find that Illinois did not have jurisdiction, it is unnecessary to address the *forum non conveniens* issue.

The judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

BRESLIN, J., concurs.

JUSTICE BARRY, specially concurring:

I agree that the trial court's result should be affirmed, but I cannot subscribe to my colleagues' reasoning. The majority correctly

notes that jurisdiction over custody matters is to be determined not by traditional concepts of subject matter jurisdiction, but by consideration of section 4(a) of the Uniform Child Custody Jurisdiction Act. In rejecting the mother's argument that Illinois was not Brandi's "home state," however, I believe that my colleagues have misconstrued the language of the statute and seriously undermined the legislative intent of the UCCJA.

In my opinion Illinois qualified as Brandi's "home state" six months after Brandi joined her mother for her fifth-grade school year. Pursuant to section 3.04, a "home state" is

> "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned, however, periods of temporary absence of any of the named persons are counted as part of the 6-month or other period." Ill. Rev. Stat. 1991, ch. 40, par. 2103.04.

This State may assume jurisdiction over custody matters pursuant to section 4(a)(1)(ii) if

> "this State
> * * *
> had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State." Ill. Rev. Stat. 1991, ch. 40, par. 2104(a)(1)(ii).

I do not agree with the majority that this State's jurisdiction is defeated under section 4(a)(1)(ii) by Brandi's "temporary absence" from California. The majority concludes that the absence was temporary and seems to suggest that by establishing jurisdiction in Illinois on the basis of "home state" California necessarily would lose jurisdiction. Such is not the case. (See, e.g., Wilcox v. Wilcox (Tenn. App. 1993), 862 S.W.2d 533, 540, appeal denied ("Under the * * * UCCJA, jurisdiction may exist in more than one jurisdiction at a time. To avoid conflict, competition, and relitigation, the UCCJA encourages courts with simultaneous jurisdiction to communicate and cooperate with each other and, when appropriate, to defer to one another").) Moreover, the majority's strained analysis allows an out-of-State parent always to make the argument that the child's presence in this State was temporary (for 11 months, as in this case, or possibly two

years or more in the next?) and thereby to defeat this State's jurisdiction.

As I see it, the six-month requirement becomes virtually meaningless if the majority's open-ended definition of "temporary absence" is accepted. "Temporary absence" is not statutorily defined. But, the statute requires that the six-month period be six *consecutive* months. This leads me to believe that the legislature meant that only "absences" *less* than six months within the relevant six-month period may be "temporary." (See, *e.g., Milner v. Kilgore* (Tex. App. 1986), 718 S.W.2d 759 (Child moved from Texas to Missouri with mother on November 22, 1984. Child's visit to grandparents in Texas from May 4, 1985, to June 23, 1985, was "temporary absence" from Missouri on these facts. On appeal, court ruled that child's home State was established in Missouri six months after the move).) Obviously, it would be illogical for the legislature to have intended that an absence *greater* than six months would be considered "temporary."

In my view, the legislative intent of section 3.04 is straightforward and clearly permits this State's courts to assume jurisdiction of custody matters upon proof that, *inter alia*, notwithstanding a temporary absence by the child or "parents, parent or person acting as a parent," the "parents, parent or person acting as a parent" lived with the child since birth or satisfied the six-month requirement. In this case "temporary absence" is not in issue since it is not disputed that Brandi lived with her mother in this State continuously for more than six consecutive months.

The majority suggests that adoption of Donni Lee's position with respect to section 4(a)(1)(ii) could violate this State's public policy of encouraging agreements for extended out-of-State visitations. I disagree. As argued by John, a court may decline the exercise of subject matter jurisdiction under the UCCJA. John's position is ignored by the majority, but in my opinion merits our consideration.

In his argument to this court, John suggests that since the determination of "jurisdiction" under the UCCJA is predicated on the best interests of the child, not the parent, the trial court's decision in this case to decline jurisdiction should be sustained on the ground of *forum non conveniens*. John refers this court to section 8 of the UCCJA and argues that California and Arizona qualify as more convenient fora under subsections (c)(1), (c)(2) and (c)(3).

Section 8(c) provides in pertinent part:

"(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another

state assume jurisdiction. For this purpose it may take into account the following factors, among others:

1. if another state is or recently was the child's home state;

2. if another state has a closer connection with the child and his family or with the child and one or more of the contestants;

3. if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state." (Ill. Rev. Stat. 1991, ch. 40, par. 2108.)

Given Brandi's life history and the history of custody litigation in this case, John suggests that all three States, Illinois, California and Arizona, would qualify under subsection (1); California most clearly qualifies under subsection (2); and California and Arizona qualify to a greater degree than Illinois under subsection (3) at the present time.

Obviously, the determination of a court's jurisdiction over child custody matters is not subject to a bright-line test. As we stated in *In re Marriage of Kitchen* (1984), 126 Ill. App. 3d 192, 196, 467 N.E.2d 344, 348, "the [UCCJA] permits some discretion in the trial court's determination of its 'jurisdiction' to ensure that litigation concerning the child's custody takes place in the forum where the ties between the State and child and [her] family are the closest." John correctly states that the ultimate decision of jurisdiction is predicated on the best interest of the child. In fact, the primary legislative purposes of the UCCJA are to promote the best interest of the child:

"The general purposes of this Act are to:

1. avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

2. promote co-operation with the courts of other states to the end that a custody judgment is rendered in that state which can best decide the case in the interest of the child." (Ill. Rev. Stat. 1991, ch. 40, pars. 2102(a)(1), (a)(2).)

A cursory review of the four jurisdictional bases enumerated in section 4(a) of the UCCJA establishes that, consistent with the foregoing purposes and but for the "home state" provision in subparagraph 1, there is substantial room for the exercise of judicial discretion in determining jurisdiction in the child's best interests. Moreover, once the threshold determination of "jurisdiction" is made, the court has broad discretion to determine whether to accept or decline jurisdiction. (*In re Marriage of Doehner* (1991), 215 Ill. App. 3d 570, 574 N.E.2d

1380.) Again, the court's primary objective is to serve the best interests of the child. *In re Marriage of Elblkasy* (1993), 241 Ill. App. 3d 662, 665, 610 N.E.2d 139, 141.

In this case, California has substantial evidence of prior contested custody litigation involving Brandi. Brandi spent most of her life in California. She spent only 11 months in Illinois, and although there was some significant evidence of her current life and well-being in Illinois, she had already been returned to the home of her primary residential parent in Arizona at the time of the filing of Donni Lee's petition. Thus, the most current evidence of her life and well-being must be found in Arizona.

The trial court, after reviewing the pleadings and the UCCJA and hearing the parties' arguments, determined that "the State of Illinois does not have jurisdiction of custody issues in this case." Accordingly, the court dismissed Donni Lee's petition to enroll the California decree. In my opinion, the trial court in this case exercised its discretion in dismissing Donni Lee's petition on the ground of "jurisdiction."

I am not unmindful of Donni Lee's argument that ordinarily a court may not "decline" to exercise jurisdiction unless it makes a preliminary finding that it has jurisdiction. (*In re Marriage of Levy* (1982), 105 Ill. App. 3d 355, 434 N.E.2d 400.) However, the purposes of the UCCJA are not advanced by formalistic jurisprudential rituals where it can be readily determined that the child's best interests are served by declining jurisdiction pursuant to section 8 of the Act. See, *e.g., In re McDonald* (1977), 74 Mich. App. 119, 126 n.7, 253 N.W.2d 678, 681 n.7 (trial court failed to rule expressly on whether Michigan had jurisdiction, but court on appeals observed that "[b]y declining to exercise jurisdiction *** the circuit court implicitly held that it had jurisdiction to resolve the dispute").

Based on the record and undisputed facts before us, I do not find it necessary or appropriate to reverse and remand this cause to the circuit court merely because I find that Illinois technically qualified as Brandi's "home state" under section 4(a)(1)(ii) at the time Donni Lee filed her pleadings in Illinois. Also I find that the court's rejection of Donni Lee's claims of jurisdiction in the alternative under subsections 4(a)(2) and (a)(4) was clearly within the court's discretion and should be sustained. In my opinion the record provides ample support for the conclusion that, as among the three States where jurisdiction could be claimed, Illinois is the least convenient forum. Thus, even though I find as a matter of law that the trial court had jurisdiction of the custody dispute under section 4(a)(1)(ii), I would affirm the trial court's dismissal of Donni Lee's petition on the ground of *forum non con-*

*veniens.* See *Ziman v. Village of Glencoe* (1971), 1 Ill. App. 3d 912, 915, 275 N.E.2d 168, 171 ("[E]ven though the reasoning of the [trial] court may have been wrong, if the record demonstrates that substantial justice on the whole has been done, we will affirm") citing *Ferraro v. Augustine* (1964), 45 Ill. App. 2d 295, 196 N.E.2d 16, and *Fitzgibbons v. Rue* (1951), 342 Ill. App. 712, 97 N.E.2d 584).

Accordingly, I would hold that the trial court's ruling dismissing Donni Lee's petition complies with the dictates of the UCCJA, and on that basis, I would affirm the court's judgment.