*In re* MARRIAGE OF MATTHEW C. SCHOEFFEL, Petitioner-Appellant, and JEANNE SCHOEFFEL, Respondent-Appellee.

Fourth District   No. 4—94—0063

Opinion filed December 30, 1994.

Arthur M. Lerner, of Lerner & Kirchner, of Champaign, for appellant.

Robert W. Dodd, of Dodd & McClellan, P.C., of Champaign, for appellee.

JUSTICE COOK delivered the opinion of the court:

This appeal raises the issue whether Illinois courts have jurisdiction to determine the custody of the parties' children pursuant to the Uniform Child Custody Jurisdiction Act (Act) (750 ILCS 35/1 *et seq.* (West 1992)).

Petitioner Matthew C. Schoeffel and respondent Jeanne Schoeffel were married on November 15, 1988, in a civil ceremony in Queens County, New York. Two sons were born of the marriage: Justin Ryan, born March 24, 1989, and Jordan Alexander, born November 7, 1991. After the marriage, Matthew and Jeanne lived together at their marital residence in Queens County, New York. The parties then moved to Champaign County, Illinois, on approximately August 10, 1991.

Jeanne did not change her New York driver's license, bank accounts, or voting eligibility. Jeanne took the children and moved back to Queens County on February 10, 1992, exactly six months after her move to Champaign County. Jeanne and the children stayed with Jeanne's parents until April 1993, at which time Jeanne obtained her own apartment in Queens County.

Matthew attempted to contact Jeanne by telephone soon after her return to Queens County but was rebuffed by Jeanne's parents. Nevertheless, Jeanne, Matthew and the children managed to reunite for a vacation in Florida during the last week of March 1992. The family drove to Champaign County in early April 1992, where Jeanne stayed a week, collected some belongings and then returned with the children to Queens County.

In August 1992, Jeanne and the children returned to Champaign County for approximately two weeks. Jeanne had hoped that this visit would lead to a reconciliation with Matthew. Jeanne took a leave of absence from her job in New York in order to attempt reconciliation. The attempt failed, and Jeanne and the children returned to their residence in Queens County, bringing some children's furniture from Champaign County with them. Jeanne resumed

work at her job. Since the August 1992 visit, the children have had no contact with Matthew or Champaign County.

On September 29, 1992, Jeanne filed an action for divorce in the Supreme Court of the State of New York, County of Queens, which in part seeks custody of the children (case No. 022452/92). Matthew subsequently filed a petition for dissolution and for injunction in the circuit court of Champaign County, Illinois, on November 12, 1992 (case No. 92—C—1526). Jeanne filed no answer or other pleading to the Illinois case. A judgment of dissolution of marriage was entered by default in Illinois on March 22, 1993.

On April 12, 1993, Jeanne filed with the trial court a special and limited appearance for the purpose of objecting to jurisdiction. The trial court found that New York was the home State of the children, and that the children had more significant connections with New York than with Illinois. The trial court therefore sustained Jeanne's objection to jurisdiction and ordered that the question of custody be resolved within Jeanne's divorce action filed in the State of New York. Matthew appeals. We affirm.

■ Section 4 of the Act lists four possible jurisdictional bases for determining child custody. (750 ILCS 35/4 (West 1992).) "[A]lthough the [Act] appears to confer subject[-]matter jurisdiction of child custody determinations, the term 'jurisdiction' is not used in its traditional sense but as a limitation on the existing jurisdiction conferred on the courts by the Illinois Constitution." (*In re Marriage of Levy* (1982), 105 Ill. App. 3d 355, 360, 434 N.E.2d 400, 403; Ill. Const. 1970, art. VI, § 9.) This limitation on jurisdiction is consistent with the avowed purposes of the Act to avoid jurisdictional competition between courts of different States and to assure that litigation concerning child custody will take place ordinarily in the State with which the child has the closest relation. 750 ILCS 35/2(1), (2) (West 1992).

■ The four bases are (1) Illinois is the home State of the child; (2) the child has significant connections to Illinois; (3) an emergency arises while the child is present in Illinois; or (4) no other State has jurisdiction, or another State has declined to exercise jurisdiction on the basis that Illinois is a more appropriate forum. (750 ILCS 35/4 (West 1992).) Nothing in the record suggests that the children were in any danger of abandonment or abuse, and thus the trial court could not have exercised "emergency jurisdiction" pursuant to section 4(a)(3) of the Act. Nor could the trial court exercise jurisdiction under any of the remaining three bases.

■ Under section 4(a)(1) of the Act, an Illinois court has jurisdiction over a child custody proceeding if Illinois was the "home State"

of the child at the time of the proceeding, or had been the home State of the child within six months before the proceeding. (750 ILCS 35/4(a)(1) (West 1992).) "Home State" is defined as:

"the [S]tate in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the [S]tate in which the child lived from birth with any of the persons mentioned, however, periods of temporary absence of any of the named persons are counted as part of the 6-month or other period." 750 ILCS 35/3.04 (West 1992).

■ Here, the trial court properly found that Illinois was not the home State of the children at the time of, or six months prior to, the commencement of the proceedings. Jeanne and the children moved to New York seven months and 19 days before September 29, 1992, the date she filed an action for custody in New York. The children lived continuously in New York during this seven-month period, with three exceptions: (1) they spent a week in Florida on a family vacation in March 1992; (2) they spent a week in Illinois in April 1992; and (3) they spent two weeks in Illinois during August 1992, during which time the parties attempted reconciliation. Matthew did not file for custody until November 12, 1992, nine months after the children moved to New York.

The trial judge also made a special finding that Jeanne and the children did not abandon their New York domicile when the parties attempted reconciliation in August 1992. Whether a State is a person's domicile is primarily a question of that person's intent; whether a State is a child's "home State" is primarily a question of time. Although we do not disturb the trial court's finding, the intent of the parties is not controlling for purposes of the Act.

In *Richardson v. Richardson* (1993), 255 Ill. App. 3d 1099, 625 N.E.2d 1122, the parties were divorced in California in 1989, and the father was made primary physical custodian of a daughter, Brandi. By written agreement entered July 5, 1991, Brandi was allowed to come to Illinois to live with her mother in order that she could attend fifth grade the following school year. While Brandi was living with her mother, the father moved to Arizona and Brandi was returned to him on June 21, 1992. On August 4, 1992, the mother filed a petition to modify custody in Illinois. The trial court held that Illinois did not have subject-matter jurisdiction under the Act, that Illinois was not Brandi's "home State," because the parties agreed Brandi was in Illinois only for the limited purpose of attending school, and thus the 11 months she spent in Illinois were only a "temporary absence"

under section 3.04 (Ill. Rev. Stat. 1991, ch. 40, par. 2103.04). The appellate court agreed, with one judge concurring in the result but disagreeing with the majority's reasoning on that issue.

We agree with the special concurrence. (*Richardson*, 255 Ill. App. 3d at 1105-10, 625 N.E.2d at 1127-29 (Barry, J., specially concurring). The first step in a case under the Act is to determine whether jurisdiction is possible under one of the four Act bases. Only after that has been done will the court decide whether another State has a closer connection with the child. The four bases insure that the State considering whether it has jurisdiction has a certain level of contact with the child. Clearly there is nothing wrong with a State where the child has been present for 11 months deciding custody issues affecting the child. The holding in *Richardson* that the 11 months in Illinois were only a "temporary absence" from California unnecessarily complicates what was intended to be a simple "home State" test: where has the child lived with a person acting as a parent for the last six months? The "temporary absence" provision is designed to prevent lapses in the six consecutive months required of a "home State," lapses caused by brief interstate visits by the child. It is a mistake to incorporate all the nuances of domicile into the Act's definition of "home State." It is also a mistake to allow parties to make agreements which control the operation of the Act.

Under the four bases of section 4, it is possible that several States may have jurisdiction. The Act achieves certainty by its provision that the first such State to exercise jurisdiction has the exclusive right to proceed. (*Jennings v. Jennings* (1985), 133 Ill. App. 3d 753, 755-56, 479 N.E.2d 419, 421-22; 750 ILCS 35/7(a) (West 1992); see Cook, *Jurisdiction in Dissolution of Marriage Cases*, 77 Ill. B.J. 266, 269 n.48 (1989).) When Matthew filed his Illinois action on November 12, 1992, the New York action was already pending. Once the action is filed jurisdiction attaches, and it makes no difference where the children are then taken. 750 ILCS 35/4(a)(1)(i) (West 1992) ("the home [S]tate of the child at the time of commencement of the proceeding"); *In re Marriage of Dagher* (1986), 145 Ill. App. 3d 379, 495 N.E.2d 1004.

Matthew argues, along the lines of *Richardson*, that Jeanne and the children did not permanently leave Illinois until August 1992. As discussed above, we reject *Richardson* and the argument that the nine months the children spent in New York can be attributed to Illinois on the basis of some alleged intent on the part of Jeanne or Matthew. Even if we were to follow *Richardson*, the trial court could appropriately have found, on the facts of this case, that the nine months in New York were not just a "temporary absence" from Illinois.

Matthew asserts in his brief that the children were "wrongfully removed" from Illinois. There is no support for this assertion in the record, and no indication that Matthew even mentioned such an argument in the trial court. We are critical of Matthew's attorneys for including such a statement in their brief. There is no indication in this case that the return to New York was on any basis other than mutual agreement. Matthew complains that when Jeanne filed her New York action she did not mention the Act. Jeanne did request custody in the New York action, and that request is sufficient to trigger application of the Act. The Act governs all custody cases, and it is not necessary to file a separate action under the Act to invoke its rules. Matthew complains there is no jurisdiction in New York because Jeanne does not meet the New York residency requirements. Assuming that is so, it is irrelevant. Custody jurisdiction does not depend on jurisdiction for termination of marriage.

Section 4(a)(2) of the Act provides Illinois courts with jurisdiction if assumption of jurisdiction would be in the best interests of the child because the child and at least one contestant have a significant connection with this State, and there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships. 750 ILCS 35/4(a)(2) (West 1992).

"The Commissioners' Note to this subsection [(750 ILCS 35/4(a)(2) (West 1992))] indicates that the purpose of paragraph two 'is to limit jurisdiction rather than to proliferate it' and '[t]he interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the [S]tate.' " *Levy*, 105 Ill. App. 3d at 361-62, 434 N.E.2d at 405, quoting 9 U.L.A. 124 (1979).

Here, Matthew has failed to show either that the children have a significant connection to Illinois or that substantial evidence regarding the well-being of the children is located within Illinois. The children have spent most of their lives in New York. Their extended families, including their maternal and paternal grandparents, reside in the New York area. New York was the center of their home lives for the nine months preceding commencement of this action. Matthew's presence in this State is the only evidence of the children's connection to Illinois and is not the "maximum contact" required for a court to exercise jurisdiction pursuant to section 4(a)(2).

Finally, a court may exercise jurisdiction if it appears that no other State would have jurisdiction under prerequisites substantially in accordance with section 4 of the Act, or if another State has

declined to exercise jurisdiction on the grounds that Illinois is the more appropriate forum to determine the custody of the children, and it is in the best interests of the children that an Illinois court assume jurisdiction.

In the present case, New York has not declined to exercise jurisdiction in favor of Illinois. New York has adopted the Act (N.Y. Domestic Relations Law § 75—a (McKinney 1988)), and thus could assume jurisdiction as the home State of the children.

Since we hold the trial court was without jurisdiction, we need not discuss whether the trial court could properly have declined to exercise jurisdiction on the grounds that Illinois was an inconvenient forum, pursuant to section 8 of the Act (750 ILCS 35/8 (West 1992)).

The judgment of the circuit court of Champaign County is affirmed.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.