THIRD DIVISION

June 4, 1997

No. 1-96-0769

IN RE: THE PARENTAGE OF )

MICHAEL J. FROST, )

)

MANUEL ZELAYA, ) APPEAL FROM THE CIRCUIT

) COURT OF COOK COUNTY.

Petitioner-Appellant, )

)

v. ) HONORABLE DAVID DELGADO,

) JUDGE PRESIDING.

DEBORAH L. FROST, )

)

Respondent-Appellee. )

JUSTICE GORDON DELIVERED THE OPINION OF THE COURT:

Petitioner, Manuel Zelaya, brought the instant action to establish paternity, custody, visitation, and child support for the minor, Michael J. Frost.  The respondent and mother of the child, Deborah L. Frost, filed a special and limited appearance and moved to dismiss the petition for lack of subject matter jurisdiction or, in the alternative, to defer to the state of California, where she and the minor resided, on the basis of 
forum
 
non
 
conveniens
.  The trial court granted respondent's motion and dismissed the petition on the basis of lack of subject matter jurisdiction.  The petitioner appeals.

On appeal, the petitioner raises several issues regarding the court's personal jurisdiction over the respondent.  Those issues are not controlling since petitioner's action was not dismissed on the basis of lack of personal jurisdiction but on the basis of lack of subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act (the UCCJA) (750 ILCS 35/1 
et
 
seq.
 (West 1994)).  See 
In re Marriage of Bueche
, 193 Ill. App. 3d 594, 550 N.E.2d 48 (1990) (distinguishing personal jurisdiction from jurisdiction under UCCJA).  Therefore, petitioner's contentions that the respondent waived her special or limited appearance are of no consequence since no special or limited appearance is required to preserve objections to subject matter jurisdiction.  See, 
e.g.
, 
Currie v. Lao
, 148 Ill. 2d 151, 592 N.E.2d 977 (1992); 
Malmberg v. Smith
, 241 Ill. App. 3d 428, 607 N.E.2d 1370 (1993) (the issue of subject matter jurisdiction cannot be waived and can be raised at any time).  Accordingly, the only issue we will address in this appeal is whether the trial court erroneously dismissed the petition for lack of subject matter jurisdiction pursuant to the jurisdictional provisions of the UCCJA.

In his verified petition to establish paternity, custody, visitation and child support, filed on January 9, 1995, the petitioner alleged that he and respondent, Deborah Frost, resided together in Chicago beginning in 1986 and that a child, Michael J. Frost, born on September 28, 1988, resulted from that relationship.  He further alleged that in May 1994 the respondent travelled to California with Michael to spend the summer with her mother and brother.  The petitioner alleged that he visited Michael and the respondent in California in June, September and December of that year.  He also alleged that, in September 1994, the respondent became undecided as to whether she would return to Chicago and that the respondent enrolled Michael in a California school.  He alleged that, on December 27, 1994, he first became aware that the respondent intended not to return to Chicago.  The petitioner further alleged that since May 1994 he had been the sole source of support of Michael and the respondent; that the respondent maintained a personal checking account in Chicago through which she obtained funds from the petitioner; and that Michael was covered by petitioner's medical insurance policy.  

In her motion to dismiss for lack of subject matter jurisdiction, the respondent argued that California and not Illinois was Michael's home state.  In support of that contention, she alleged that in May 1994 she and Michael took all of their personal possessions and moved to California; that in May 1994 the petitioner had actual knowledge of her intent not to return; and that in July 1994 she enrolled Michael in a California school.  The respondent also alleged that the petitioner had visited Michael and her in California on four occasions and that on those occasions the petitioner knew of the permanency of their California residency.  The respondent alleged that on January 13, 1995, prior to her being served in petitioner's action, she filed a parentage action in the state of California.

In his verified response to the respondent's motion to dismiss, the petitioner alleged that he took no legal action to prevent the "relocation" of Michael and the respondent from Chicago to California because the respondent had indicated that she would return to Chicago in September 1994.  As proof of respondent's intent to return, the petitioner attached copies of electric and gas bills in respondent's name for the months of December 1994 and January 1995 for utility usage at the Chicago apartment where the petitioner and respondent had resided; respondent's voter's registration card, dated September 1994, showing the Chicago apartment as her residence; petitioner's affidavit; and the affidavit of the landlord of the Chicago apartment.  The landlord averred that the respondent never discussed with him the termination of her lease; that she told him in May 1994 that she was going to live with her brother in California on a temporary basis; and that she told him that she was going to return to Illinois.  In his affidavit, the petitioner reiterated the allegations made in his petition and response to respondent's motion to dismiss.

In her reply to petitioner's response, respondent denied that she told the petitioner that she was going to California on a temporary basis.  She denied that her failure to make address changes with her creditors and bank evidenced an intent to return.  She argued that her intent not to return was evidenced by her transfer of all of her possessions to California and by her leaving a "longtime good paying job."  She further stated that the landlord of the Chicago apartment was petitioner's "good friend"; that there was no written lease to necessitate her obtaining a release; and that the petitioner remained in the apartment thus obviating the need to terminate the lease.  She denied telling the landlord that her move was temporary.

Section 4(a) of the UCCJA lists four possible jurisdictional bases for determining the forum in which to litigate child custody issues.  It provides in pertinent part as follows:

"The circuit courts have jurisdiction to make a child custody determination by initial or modification judgment if:

1.  this State

(i) is the home state of the child at the time of commencement of the proceeding, or

(ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or

2.  it is in the best interest of the child that a court of this State assume jurisdiction because

(i) the child and his parents, or the child and at least one contestant, have a significant connection with this State and

(ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships ***."  750 ILCS 35/4(a) (West 1994).

Two additional jurisdictional bases, not here relevant, include situations where an emergency arises and the child is present in Illinois (750 ILCS 35/4(a)(3) (West 1994)) and where no other state has jurisdiction or another state has declined to exercise jurisdiction on the basis that Illinois is the more appropriate forum (750 ILCS 35/4(a)(4) (West 1994)).
(footnote: 1)  For purposes of the home state jurisdictional basis set forth in section 4(a)(1), section 3.04 of the UCCJA defines "home state" as:

"the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent, for at least 6 consecutive months, ***, however, periods of temporary absence of any of the named persons are counted as part of the 6-month or other period."  750 ILCS 35/3.04 (West 1994).

Based upon the pleadings and the arguments of the parties' counsel, the trial court found that Illinois was not the home state of the child and granted respondent's motion to dismiss for lack of subject matter jurisdiction.

Under the home state provisions of section 4(a)(1) of the UCCJA, an Illinois court has jurisdiction over a child custody proceeding if at the time of commencement of the proceeding the child has resided in Illinois with a parent or person acting as a parent for six consecutive months.  If at the time of commencement of the proceeding the child is not present in Illinois, home state status exists in Illinois if the child had resided with a parent or a person acting as a parent in Illinois for at least six consecutive months within six months before the proceeding was initiated.  750 ILCS 35/4(a)(1) (West 1994).  
In re Marriage of Schoeffel
, 268 Ill. App. 3d 839, 644 N.E.2d 827 (1994).  Periods of temporary absence are counted as part of the six-month residency period.  750 ILCS 35/3.04 (West 1994).

A conflict exists within the districts of this court as to what constitutes a temporary absence.  The Third District of the Illinois Appellate Court held that a temporary absence can occur, regardless of the length of time involved, where the absence is intended to last a limited time as opposed to a perpetual or indefinite period of time.  
Richardson v. Richardson
, 255 Ill. App. 3d 1099, 625 N.E.2d 1122 (1993).  In that case the child's father, who was the primary physical custodian and a resident of California, agreed to let the child live in Illinois with her mother during the child's fifth grade school year.  The child resided in Illinois from July 1991 to June 1992 and then returned to live with her father.  In August 1992, the mother filed a petition in Illinois to modify custody.  The trial court dismissed the petition finding that Illinois was not the home state.  Affirming the dismissal, the appellate court rejected the mother's "strict 'physical presence' analysis" noting that, under that analysis, agreements for extended out-of-state visitations would be discouraged because any extended visit beyond six months "would automatically vest another state with jurisdiction over the custody issue."  
Richardson
, 255 Ill. App. 3d at 1102, 625 N.E.2d at 1124-25.  As a result, the court found that the child's eleven-month presence in Illinois was a temporary absence from California since "at the time [the child] came to Illinois, and throughout her entire stay, it was the clear understanding of all parties that [the child] would not remain in [Illinois]."  
Richardson
, 255 Ill. App. 3d at 1103, 625 N.E.2d at 1125.

In a special concurrence to the 
Richardson
 opinion, Justice Barry rejected the court's reasoning with respect to temporary absence stating that,

"'Temporary absence' is not statutorily defined.  But, the statute requires that the six-month period be six 
consecutive
 months.  This leads me to believe that the legislature meant that only 'absences' 
less
 than six months within the relevant six-month period may be 'temporary.'"  (Emphasis in original.)  See 
Richardson
, 255 Ill. App. 3d at 1107, 625 N.E.2d at 1127 (Barry, J., specially concurring).

That concurrence was adopted by the Fourth District of the Illinois Appellate Court in 
In re Marriage of Schoeffel
, 268 Ill. App. 3d 839, 644 N.E.2d 827 (1994).  The 
Schoeffel
 court also rejected the notion that intent is relevant to the query of whether an absence is temporary.  In that regard the court stated:

"The holding in 
Richardson
 that the 11 months in Illinois were only a 'temporary absence' from California unnecessarily complicates what was intended to be a simple 'home State' test:  where has the child lived with a person acting as a parent for the last six months?  The 'temporary absence' provision is designed to prevent lapses in the six consecutive months required of a 'home State,' lapses caused by brief interstate visits by the child.  It is a mistake to incorporate all the nuances of domicile into the Act's definition of 'home State.'  It is also a mistake to allow parties to make agreements which control the operation of the Act."  268 Ill. App. 3d at 843, 644 N.E.2d at 830.

In 
Schoeffel
, the mother and children moved from Illinois to New York in February 1992.  Thereafter, they spent one week in Florida in March 1992, one week in Illinois in April 1992, and two weeks in Illinois in August 1992.  After the mother's attempted reconciliation with the father failed in August of that year, the mother returned to New York and filed a custody action there in September 1992.  The father filed a custody action in Illinois in November 1992.  The Illinois court found that New York, not Illinois, was the home state of the children because they had resided in New York for seven months and 19 days before the custody action was commenced.  Refusing to consider the intent of the parties, the court rejected the father's argument that the time the mother and children spent in New York was a temporary absence from Illinois and that the children's permanent residence in New York did not begin until August 1992 after the attempted reconciliation in Illinois failed.

As can be gleaned from the above-cited quotations from 
Schoeffel
 and from the special concurrence in 
Richardson
 upon which 
Schoeffel
 relies, the "strict 'physical presence' analysis" espoused therein is propelled more as a matter of policy preference than as a matter of literal or contextual statutory compulsion.  As noted above, the special concurrence in 
Richardson
 conceded that "'[t]emporary absence' is not statutorily defined."  
Richardson
, 255 Ill. App. 3d at 1107, 625 N.E.2d at 1127.  As pointed out by the 
Richardson
 majority, the term "temporary absence" does not connote a particular length of time.  Under appropriate circumstances, the term can be applied to a period of many months.  As further pointed out by the 
Richardson
 majority, 

"The concurring opinion incorrectly asserts that temporary absences must be less than six months since the UCCJA requires that a child live in a State for six consecutive months to establish it as a new home State.  The concurring opinion confuses two provisions which pertain to distinct concerns.  Indeed, as demonstrated in this case, these provisions are directed toward different States.  The 'temporary absence' provision applies to a State already possessing jurisdiction (here, California), while the 'home state' provision applies to States in which a party is attempting to establish jurisdiction (here, Illinois).  As the concurring opinion correctly notes, more than one State may possess jurisdiction at the same time, and therefore, the establishment of jurisdiction in Illinois is unrelated to the divesting of jurisdiction in California.  Thus, the concurring opinion erred in concluding that the six-month requirement in the 'home state' provision served as a limitation on the 'temporary absence' provision."  
Richardson
, 255 Ill. App. 3d at 1103-04, 625 N.E.2d at 1125.

While there is some attraction to the mathematical certainty propounded under 
Schoeffel
 and the special concurrence in 
Richardson
 which would strictly limit the duration of a "temporary absence," such an analysis could bring about inequitable results especially in situations such as those alleged in the instant case.  It is our belief, as expressed by the 
Richardson
 majority, that parents who live in separate jurisdictional forums should be encouraged to negotiate extended out-of-state visitation agreements for their children.  The freedom to reach such agreements should not be hampered by fear that jurisdiction would vest in another state if the out-of-state absence extends beyond six months.  Any such fear would have a chilling effect on the formation of any such agreements; and family bonds would suffer.  Moreover, if the 
Schoeffel
 analysis were applied, the parent, who is unaware of the other parent's breach of the promise to return the child, would lose the right to bring that petition in his state after six months even though he was lulled into believing that the child would be returned at the conclusion of the agreed upon out-of-state visit.  The child's out-of-state absence for any period over six months would automatically shift the child's home state to the state of visitation and the parent in the original state would have lost any right to initiate action in that state.  See 
Schoeffel
, 268 Ill. App. 3d at 842, 644 N.E.2d at 829 (stating "intent of the parties is not controlling for purposes of the Act"); 
Richardson
, 255 Ill. App. 3d 1099, 625 N.E.2d 1122 (Barry J., specially concurring).

Thus, we adopt the 
Richardson
 analysis because it encourages settlement of visitation issues and because it offers protection when the promise to return the child is breached either because it was falsely made at the outset or because the parent decides at a later time not to return the child.  Under the 
Richardson
 analysis, the court could consider the parents' agreement and their intent regarding the temporary or permanent status of the child's out-of-state absence.  While the child may have resided in the new state for a period of six months or longer, the six-month period within which the parent in the original state could file a custody action within that state would not begin to run until that parent had reason to recognize the permanency of the out-of-state absence.  In addition to being more pliable and more equitable, such a result would discourage the premature filing of custody actions by the local parent in order to preserve jurisdiction which would be lost under the strict six-month rule espoused in 
Schoeffel
.

In view of our adoption of 
Richardson
, we find that an evidentiary hearing must be held in order to determine whether Michael's absence from Illinois qualified as a temporary absence, based upon an agreement between his parents that Michael would return to Illinois, such that Illinois was Michael's home state at the time the petitioner filed his action.  In the proceedings below, the petitioner alleged the existence of a mutual agreement between the respondent and himself to allow the respondent to take Michael to California for the summer of 1994.  He alleged that the agreement included a promise by the respondent that she would return with Michael to Illinois in September 1994.  The petitioner also alleged that he did not become aware until December 27, 1994 of the respondent's decision to take up permanent residence with Michael in California.  The respondent, on the other hand, denied the existence of an agreement between the petitioner and herself and contended that the petitioner knew in May 1994 that she and Michael were not returning to Illinois.
(footnote: 2)  Given these conflicting contentions, an evidentiary hearing must be held to determine whether the parties had agreed that Michael would return to Illinois at the conclusion of his visit to California and whether the petitioner knew more than six months before he filed his petition that Michael's residence in California was permanent.

We also note that on remand, even if the court finds that Illinois was not the home state because the petitioner did not file his action within six months of acquiring knowledge that Michael would not be returning to Illinois, the court should also examine whether jurisdiction may exist under section 4(a)(2) of the UCCJA, that is, whether Michael has significant contact with Illinois.  Under the significant connection test set forth in section 4(a)(2), subject matter jurisdiction exists where the child and at least one parent or contestant has at least one significant connection with Illinois and where substantial evidence exists in this state concerning the child's present or future care, protection, training, and personal relationships.  750 ILCS 35/4(a)(2) (West 1994).  Maximum rather than minimum contacts with Illinois are required in order for jurisdiction to exist under section 4(a)(2).  See 
Levy v. Levy
, 105 Ill. App. 3d 355, 434 N.E.2d 400 (1982).

In the instant case, Manuel alleged in his petition that jurisdiction existed under the home state provision of section 4(a)(1) as well as under the significant contact provision of section 4(a)(2).  He alleged certain contacts between Michael and the state of Illinois in that Michael was born here and had lived in this state for the first five and one-half years of his life.  The trial court made no findings with respect to this contention.

Moreover, should the court find that jurisdiction exists under either section 4(a)(1) or 4(a)(2), it must then determine whether jurisdiction should be declined, as the respondent contends, on the grounds that Illinois is an inconvenient forum pursuant to section 8 of the UCCJA (750 ILCS 35/8 (West 1994)).  See 
Levy
, 105 Ill. App. 3d 355, 364, 434 N.E.2d 400, 406 quoting 9 Unif. Laws Ann. 139 (1979) (case remanded for finding as to whether court should decline to exercise jurisdiction; section 8 "'serves as a second check on jurisdiction' once the tests of section 4 have been met").

For the foregoing reasons, the judgment of the Circuit Court is reversed and remanded for further proceedings consistent with this order.

Reversed and remanded.

CAHILL AND LEAVITT, JJ., concur.

FOOTNOTES
1:
Here, sections 4(a)(3) and 4(a)(4) of the UCCJA would not apply because Manuel has not alleged the existence of an emergency situation involving Michael accompanied by Michael's presence in Illinois nor has he alleged that another state has declined jurisdiction in favor of Illinois.  750 ILCS 35/4(a)(3), (4) (West 1994).

2:
The respondent also alleged that the petitioner became aware of her decision not to return to Illinois with Michael when he visited Michael and her in California.  However, as noted in the text of this opinion, any knowledge of the permanency of Michael's residency in California acquired after July 9, 1994 would have been within six months of the January 9, 1995 filing date and would not defeat petitioner's contention that Illinois was Michael's home state.